1

*(Counsel listed on signature page)*

2

3

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

4

5   TECHNOLOGY PROPERTIES LIMITED
    LLC, et al.,

6                               Plaintiffs,

7           v.

8   HUAWEI TECHNOLOGIES CO., LTD.,

9   HUAWEI DEVICE CO., LTD., HUAWEI
    DEVICE USA INC., FUTUREWEI

10  TECHNOLOGIES, INC., HUAWEI
    TECHNOLOGIES USA INC.,

11

12                              Defendants.

13

14  TECHNOLOGY PROPERTIES LIMITED
    LLC, et al.,

15                              Plaintiffs,

16          v.

17  ZTE CORPORATION and ZTE (USA)
    INC.,

18

19                              Defendants.

20  TECHNOLOGY PROPERTIES LIMITED
    LLC, et al.,

21                              Plaintiffs,

22

23          v.

24  SAMSUNG ELECTRONICS CO., LTD.
    and SAMSUNG ELECTRONICS

25  AMERICA, INC.,
                                Defendants.

26

27

28

Case No. 3:12-cv-03865-VC (PSG)

**PLAINITIFFS' MOTION FOR DE
NOVO DETERMINATION OF
DISPOSITIVE MATTER REFERRED
TO MAGISTRATE JUDGE, OR, IN
THE ALTERNATIVE, MOTION FOR
RELIEF FROM NONDISPOSITIVE
PRETRIAL ORDER OF MAGISTRATE
JUDGE**

**DATE:          Nov. 19, 2015
TIME:          10:00am
PLACE:        Courtroom 4
JUDGE:       Hon. Vince Chhabria**

Case No. 3:12-cv-03876-VC (PSG)

Case No. 3:12-cv-03877-VC (PSG)

---

<table>
<tr><td>1</td><td>TECHNOLOGY PROPERTIES LIMITED</td><td>Case No. 3:12-cv-03880-VC (PSG)</td></tr>
<tr><td>2</td><td>LLC, et al.,</td><td></td></tr>
</table>

TECHNOLOGY PROPERTIES LIMITED
LLC, et al.,

                Plaintiffs,

      v.

LG ELECTRONICS, INC. and LG
ELECTRONICS U.S.A., INC.,

              Defendants.

Case No. 3:12-cv-03880-VC (PSG)

TECHNOLOGY PROPERTIES LIMITED
LLC, et al.,

                Plaintiffs,

      v.

NINTENDO CO., LTD. and NINTENDO
OF AMERICA, INC.,

              Defendants.

Case No. 3:12-cv-03881-VC (PSG)

# <u>TABLE OF CONTENTS</u>

NOTICE OF MOTION AND MOTION ................................................................ 1

STATEMENT OF RELIEF ............................................................................... 1

MEMORANDUM IN SUPPORT........................................................................ 1

I.      INTRODUCTION ................................................................................. 1

II.     PROCEDURAL POSTURE ................................................................... 2

III.    OVERVIEW OF THE '336 PATENT.................................................... 3

IV.     APPLICABLE LAW .............................................................................. 4

        A.      Objecting to a Magistrate Judge's Order ................................. 4

        B.      Claim Construction Law ........................................................... 4

V.      ARGUMENT ......................................................................................... 5

        A.      The R&R Issued by Judge Grewal is Case Dispositive and therefore
                the Construction of the Entire Oscillator Term is Subject to
                *De Novo* Review ....................................................................... 6

        B.      The Applicants Did Not Make the Alleged Disclaimers ....................... 7

                1.      Magar ................................................................................ 8

                2.      Sheets ............................................................................. 11

VI.     CONCLUSION.................................................................................... 14

CERTIFICATE OF SERVICE ....................................................................... 17

**Cases:**

*Maisonville v. F2 Am., Inc.*, 902 F.2d 746 (9th Cir. 1990) ............................................. 6

*North Am. Container Inc. v. Plastipak Packaging Inc.,* 415 F.3d 1335 (Fed. Cir. 2005) ........... 4-5

*Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314 (Fed. Cir. 2003) ................................. 5

*Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362 (Fed. Cir. 2012) ........................... 4

*United States v. Rivera-Guerrero*, 377 F.3d 1064 (9th Cir. 2004) ................................. 4, 6

*Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576 (Fed. Cir. 1996) .............................. 4

**Statutes:**

28 USC § 636(b)(1)(A) ............................................................................. 4, 6

**Other Authorities:**

Civil L.R. 72 ....................................................................................... 1

FED. R. CIV. P. 72 ............................................................................... 4, 6

FED. R. CIV. P. 72(a) ............................................................................ 5-6

FED. R. CIV. P. 72(b) .............................................................................. 6

FED. R. CIV. P. 72(b)(3) ........................................................................... 5

Patent L.R. 4-3(c) ............................................................................... 6-7

## NOTICE OF MOTION AND MOTION

TO THE COURT AND ALL COUNSEL OF RECORD:

NOTICE IS HEREBY GIVEN that on November 19, 2015, at 10:00 AM, or as soon thereafter as counsel may be heard in Courtroom 4 of the above-titled court, located at 450 Golden Gate Avenue San Francisco, CA 94102, Plaintiffs will and hereby do move the Court for a *de novo* determination of dispositive matter referred to magistrate judge, or, in the alternative, motion for relief from non-dispositive pretrial order of magistrate judge, pursuant to Civil L.R. 72.

This motion is based upon this notice, the accompanying memorandum of points and authorities, the accompanying declaration of Barry Bumgardner, all pleadings, papers and records on file in this action, including the record of the *Markman* hearing held in front of Judge Paul Grewal on September 18, 2015, and any oral argument presented at the hearing on this matter.

## STATEMENT OF RELIEF

For the reasons set forth below, Plaintiffs seek a *de novo* review of the Report & Recommendation of Judge Grewal regarding his construction of the term "entire oscillator."

## MEMORANDUM IN SUPPORT

### I. INTRODUCTION

On September 22, 2015, Judge Grewal issued a "Claim Construction Report and Recommendation" (hereinafter the "R&R") construing the term "entire oscillator disposed upon said integrated circuit substrate" of U.S. Pat. No. 5,809,336 (the "'336 Patent"). See Ex. A[1] (Dkt. 104,[2] Report & Recommendation). Judge Grewal's R&R improperly finds disclaimer associated with the "entire oscillator" term where none exists, and, importantly, has the effect of granting summary judgment of non-infringement in favor of the Defendants in each of the above-styled

---

[1] All exhibits cited in this brief are attached to the accompanying Declaration of Barry J. Bumgardner in Support of Plaintiffs' Motion for De Novo Determination.

[2] Unless otherwise indicated, docket numbers refer to documents from *Technology Properties Ltd., et al. v. Samsung Electronics Co., Ltd.*, Case. No. 3:12-cv-3877.

cases. In addition, even if subject matter was disclaimed during the prosecution of the '336 Patent, the disclaimer certainly is not as broad as the one described in the R&R. As a result of the dispositive nature of this issue, Plaintiffs move for a *de novo* determination of the meaning of the "entire oscillator" term. Should the Court consider the R&R to be non-dispositive, Plaintiffs move in the alternative that the Court find that Judge Grewal's R&R was clearly erroneous.

In the parties' claim construction briefing, both Defendants (who submitted a joint claim construction brief) and Plaintiffs agreed principally on the meaning of the sole disputed term, an "entire oscillator disposed upon said integrated circuit" as "an oscillator that is located entirely on the same semiconductor substrate as the central processing unit." Plaintiffs argued this should have been the complete construction of the term. Defendants, on the other hand, argued that the construction should include additional language – "and does not rely on a control signal or an external crystal/clock generator to cause clock signal oscillation or control clock signal frequency" – to reflect subject matter that was "disclaimed" during the prosecution of the '336 Patent. Ultimately, Judge Grewal agreed with the parties as to what the "entire oscillator" was – "an oscillator that is located entirely on the same semiconductor substrate as the central processing unit", but came to his own conclusion as to the disclaimer, finding that the claimed "entire oscillator" was one "that does not require a control signal and whose frequency is not fixed by any external crystal." Plaintiffs object to Judge Grewal's claim construction.

## II.    PROCEDURAL POSTURE

Each of the above-styled cases (collectively, the "California Actions") is a civil action alleging infringement of the '336 Patent. The suits, originally filed on July 24, 2012, were stayed pending an investigation at the International Trade Commission (the "ITC Investigation"). The ITC Investigation concluded on March 21, 2014, after which the stay was lifted in the California Actions. In addition to the ITC Investigation and California Actions, a trial was held in the Northern District of California, with Plaintiff HTC Corp. seeking a declaratory judgment of non-infringement and Defendants (the Plaintiffs in the California Actions) pursuing a counterclaim of infringement. The trial, held in front of Judge Grewal, resulted in a jury finding of infringement of certain HTC products. While on appeal, Plaintiffs and HTC settled their

dispute. On October 17, 2014, the California Actions subject to the present motion were consolidated in front of Judge Grewal for pretrial matters. See Dkt. 16.

After the parties exchanged simultaneous opening and responsive claim construction briefs (See, Exs. B-E, Dkts. 94, 95, 96, and 97), a *Markman* hearing was held on September 18, 2015, in front of Judge Grewal. On September 22, Judge Grewal issued his R&R, providing a construction of the "entire oscillator" term. As a result of this ruling, Plaintiffs and four of the five Defendants (excepting Huawei) agreed to move to stay the underlying actions, with the exception of claim construction objections, and stipulated that under the construction recommended by Judge Grewal in the R&R, "all accused products of all [moving Defendants] do not infringe the asserted claims."[3] See Ex. F, Dkt. 105 ("Joint Motion to Stay").

## III.   OVERVIEW OF THE '336 PATENT

The '336 Patent issued on September 15, 1998 and is based on an application filed on August 3, 1989. See Ex. H, U.S. Pat. No. 5,809,336. While pending at the United States Patent and Trademark Office ("USPTO"), the patent examiner contested the patentability of the pending claims, issuing four rejections prior to ultimately granting the patent. Applicants responded by distinguishing the claims of the '336 Patent from the cited references. After adding the limitations of a then pending dependent claim regarding a second independent clock for clocking external devices at the behest of the patent examiner, the application was allowed. The '336 Patent has been involved in litigation both in this district and the Eastern District of Texas, as well as at the ITC. It has been the subject of six reexamination requests, resulting in two reexaminations certificates. In total, the '336 Patent has already overcome more than 600 prior art references that were raised against it during prosecution and/or reexamination.

The "entire oscillator" term has been construed several times. The constructions reached by the various tribunals that have looked at the issue are found in Plaintiffs' Opening *Markman*

---

[3] On Friday, October 2, 2015, Judge Grewal granted a contested motion staying Plaintiffs' case against Huawei. See Ex. G, *Technology Properties Ltd., et al. v. Huawei Technologies Co., Ltd. et al.*, Case. No. 3:12-cv-3865, Dkt. 104. In each of the above cases, Plaintiffs assert independent claims 6 and 13, along with dependent claims 7, 9, 14, and 15 (the "Asserted Claims").

Brief. See Ex. C at pp. 1-5 (presenting a summary of how other tribunals have treated the "entire oscillator" term). Notably, Judge Grewal's recommended construction of "entire oscillator" does not comport with any of these prior constructions, including the one issued by Judge Grewal in the HTC case.

## IV.    APPLICABLE LAW

### A.    Objecting to a Magistrate Judge's Order

A party may object to a magistrate judge's order. FED. R. CIV. P. 72. If the matter is non-dispositive, the district judge reviews the order to determine whether the magistrate's decision was clearly erroneous. *Id.* When the magistrate judge rules on a dispositive motion, the district judge must determine *de novo* any part of the magistrate's order that was objected to. *Id.* Although 28 USC § 636(b)(1)(A) contains a list of "dispositive" motions, the list is not all-inclusive. In the 9th Circuit, courts look to the effect of an order to determine if the matter is dispositive. *United States v. Rivera-Guerrero*, 377 F.3d 1064, 1068 (9th Cir. 2004).

### B.    Claim Construction Law

This Court is generally familiar with the various tenets of claim construction, so a general discussion of the applicable law is not included. Prosecution disavowal/disclaimer, however, is a more nuanced subject. While the words of a claim are normally given their customary and ordinary meaning, "there are only two exceptions to this general rule: 1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows [also referred to in cases as "disclaims"] the full scope of a claim term either in the specification or during prosecution." *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012), citing *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1580 (Fed. Cir. 1996). The standard for disavowal/disclaimer of claim scope is exacting. *Thorner*, 669 F.3d at 1366. "The patentee may demonstrate intent to deviate from the ordinary and accustomed meaning of a claim term by including in the specification expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope." *Id.*

Any disclaimers that are found must be the result of statements made by the patentee/applicant during the prosecution of the patent at issue. *North Am. Container Inc. v.*

*Plastipak Packaging Inc.,* 415 F.3d 1335, 1345-46 (Fed. Cir. 2005). As stated by Defendants in their responsive brief:

> The focus must be on the arguments applicants made to distinguish [the prior art at issue], as those are what define the disclaimer. . . . As the Federal Circuit made clear in *North Am. Container*, for example, the scope of the disclaimers must be measured by *what the applicants said during prosecution*, not by what was necessary to distinguish the claims from the prior art. 415 F.3d at 1340-41.

Ex. D, Defendants' Responsive Claim Construction Brief, Dkt. 96 at 5 (emphasis in original). Thus, in determining what, if any disavowals/disclaimers were made by patentee/applicant during the prosecution of a patent, the analysis must look to the words used by patentee/applicant, as those words "define" the disclaimer. Notably, though, to qualify as disclaimer, these statements must be "clear and unmistakable" as the Federal Circuit has "consistently rejected prosecution statements too vague or ambiguous to qualify as a disavowal of claim scope." *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1325-26 (Fed. Cir. 2003).

## V. ARGUMENT

These objections are made to Judge Grewal's R&R regarding construction of the claim term "an entire oscillator disposed upon a single integrated circuit." Judge Grewal construed the "entire oscillator" term as "an [oscillator] located entirely on the same semiconductor substrate as the [central processing unit] that does not require a control signal and whose frequency is not fixed by any external crystal." The basis of Judge Grewal's construction is his erroneous finding that Applicants made certain disclaimers during the prosecution of the '336 Patent. Based upon the erroneous finding of disclaimer, Judge Grewal improperly included negative limitations into the claim construction (*i.e.,* "that does not require a control signal and whose frequency is not fixed by any external crystal"). Because Judge Grewal's claim construction (if adopted) has the effect of being case dispositive, thus the Court should review it under a standard of *de novo* review. FED. R. CIV. P. 72(b)(3). Even if this Court determines that the issue is not properly classified as dispositive, Judge Grewal's R&R should be modified because it is clearly erroneous. FED. R. CIV. P. 72(a).

**A. The R&R Issued by Judge Grewal is Case Dispositive and therefore the Construction of the Entire Oscillator Term is Subject to *De Novo* Review.**

The clear impact of Judge Grewal's construction of the "entire oscillator" term is summary judgment of non-infringement in favor of Defendants, thus making this a dispositive issue requiring *de novo* review. The Federal Rules distinguish between the standard of review required for objections to a magistrate judge's order on dispositive and non-dispositive matters. When an objection to a magistrate judge's order is properly made, orders which are dispositive receive a *de novo* determination by the District Judge, who may accept, reject, or modify the magistrate judge's opinion. FED. R. CIV. P. 72(b). Those issues which are non-dispositive are entitled to review by the district judge under a "clearly erroneous" standard. FED. R. CIV. P. 72(a). While Rule 72 does not indicate which matters are dispositive, 28 U.S.C. § 636(b)(1)(A) lists several motions which are considered dispositive and entitled to *de novo* review. This list is not exhaustive. In the 9th Circuit, courts look to the effect of an order to determine if the matter is dispositive to a claim or defense of a party. *Rivera-Guerrero*, 377 F.3d at 1067-68. "[W]e do not simply look to the list of excepted pretrial matters in order to determine the magistrate judge's authority. Instead, we must look to the effect of the motion, in order to determine whether it is properly characterized as 'dispositive or non-dispositive of a claim or defense of a party.'" *Id.* at 1068, citing *Maisonville v. F2 Am., Inc.*, 902 F.2d 746 (9th Cir. 1990).

The plain effect of Judge Grewal's R&R is judgment of non-infringement in favor of Defendants. Three days after Judge Grewal's issued the R&R, the parties (with the exception of Huawei), filed a joint stipulation stating that "the parties hereby stipulate that all accused products of all Defendants in this Action do not infringe the asserted claims of U.S. Patent 5,809,336 under the Entire Oscillator Construction." Dkt. 105 at ¶4. It is indisputable that the effect of the R&R is dispositive, and Plaintiff's timely objection to the R&R requires *de novo* review by this Court.

This situation is not unusual, as claim construction rulings are frequently case dispositive. In fact, Northern District Patent L.R. 4-3(c) expressly recognizes the potentially dispositive nature of claim construction, requesting the parties to identify which of the claim terms whose

construction may be dispositive. In this particular instance, Defendants identified the "entire oscillator" construction as potentially dispositive. See Ex. I, Joint P.R. 4-3 statement, Dkt. 72 at 4. Evidencing this belief, Defendants directed a significant amount of their presentation at the *Markman* hearing toward non-infringement. During the "tutorial" phase of the *Markman* hearing, Defendants spent significant time discussing the nature of their own products, a subject which had nothing to do with claim construction and everything to do with non-infringement. During the "argument" phase of the *Markman* hearing, counsel for Defendants spoke at length about the importance of this claim term toward non-infringement. Defendants also harkened to non-infringement in their opening *Markman* brief, explicitly comparing the '336 Patent to accused products. Ex. B at 13-14. Having prevailed before Judge Grewal on the "entire oscillator" construction, Defendants effectively secured a judgement of non-infringement, which requires this Court to review Judge Grewal's determination *de novo*.

### B. The Applicants Did Not Make the Alleged Disclaimers

Judge Grewal's construction of "entire oscillator" is based on a finding that the Applicants made certain "disclaimers" while distinguishing their invention from two prior art references: U.S. Pat. No. 4,503,500 ("Magar") and U.S. Pat. No. 4,670,837 ("Sheets").[4] R&R at 4. Plaintiffs dispute that any disclaimer actually occurred during Applicants' correspondence with the USPTO. Indeed, several courts (as well as Judge Grewal himself) have previously construed the "entire oscillator" term, and none of them found the sweeping disclaimer advocated by Judge Grewal in his R&R. This record begs the obvious question – how can there be "clear and unmistakable" disavowal of the broad scope advocated by Judge Grewal if several, experienced patent judges have reviewed the same record as Judge Grewal and reached a different conclusion? The answer is readily apparent – no clear and unmistakable disavowal exists in the patent prosecution, and Judge Grewal's finding of clear and unmistakable disclaimer is erroneous.

Applicants distinguished Magar and Sheets on the basis of existing claim limitations. But

---

[4] Plaintiffs refer to those who prosecuted the '336 Patent in the USPTO as "Applicants", as the entities that owned the application that became the '336 Patent were different entities than Plaintiffs.

even if some disclaimers exist (which Plaintiffs dispute), they are not as broad as those found by Judge Grewal. As discussed in detail below, even if one does find that Applicants did disclaim "something" during the prosecution of the '336 Patent, the subject matter actually disclaimed is far less than that described in the R&R. At most, the proper scope of disclaimer should be an oscillator "that does not require command, manual, or programmed inputs to change frequency and excluding external crystals/clocks to generate a clock signal."

### 1. Magar

Judge Grewal's construction includes the limitation that the oscillator of the '336 Patent cannot have a frequency that is "fixed by any external crystal." The R&R purports to justify this limitation by examining the arguments made to distinguish the present invention from Magar. The statements made by the Applicants, however, do not support the construction provided, particularly if examined in light of the Magar disclosure.

Magar, attached as Ex. J, was drawn to a specialized processor that would be optimized for performing certain arithmetic tasks. Ex. J, 6:34, et seq. In explaining the specialized processor, Magar describes a particular clocking scheme that involves an external crystal and a component called "CLOCK GEN," seen in the bottom right of Figure 2a. Ex. J, Fig 2a and 15:23-41. Figures 2 and 3 of Magar, along with column 15 of Magar, demonstrate how Magar utilizes the external crystal to generate a 20MHz clock signal. That clock signal drives the on-chip "CLOCK GEN" circuitry shown in Figure 2 and diagramed in Figure 3. Ex. J at Figs. 2a, 3, 15:23-41. After receiving the 20MHz signal via pins X1 and X2, the "CLOCK GEN" circuitry in Magar creates four quarter-cycle clocks seen in Q1-Q4, having a period of 200 nanoseconds (a 5MHz clock signal). *Id.* at 15:23-35. Importantly, there is no on-chip oscillator in Magar. Rather, the clock signal for the CPU is generated by the off-chip crystal. Stated differently, Magar is a one-oscillator system. This is critical to understanding the statements made to the USPTO.

As explained in Plaintiffs' responsive brief to Judge Grewal (see Ex. E at 2-9), the statements relied upon by Defendants in their briefing and Judge Grewal in the R&R do not support a finding of disclaimer. In fact, Applicants' statements during prosecution distinguish

Magar based on existing claim limitations, and clarify that (unlike Magar) the claimed invention does not rely on an external oscillator to generate a clock signal. The oscillator in the claimed invention is on-chip – and, thus, the clock signal is generated on-chip, while Magar's clock is off-chip, a difference specifically captured by the explicit language of the claim.

Judge Grewal, however, cites four sections of Applicants' responses to Magar to support his construction, alleging that the statements made to the USPTO require a finding of disclaimer. Yet, when examined closely, the statements do not create disclaimer individually, nor do they create disclaimer when taken as a whole.

Judge Grewal first cites the Applicants' argument to the USPTO as found in their July 7, 1997 Office Action Response. *See* R&R at 4, lns. 14-18, *see also* Ex. K, July 7, 1997 Office Action Response at 3-4. Judge Grewal alleges that this paragraph is an attempt to "distinguish Magar by emphasizing that the clock disclosed in Magar was fixed by a crystal that was external to the microprocessor, unlike their on-chip variable speed clock." R&R at 4. Judge Grewal is correct that it the Applicants argued that Magar used an external crystal, and that those crystals are fixed frequency. Further, Applicants state that the microprocessor <u>clock</u> is frequency controlled by a crystal. But, a "clock" is not the same thing as an oscillator. See Ex. K at 4, (explaining Applicants' position that all oscillators are clocks but not all clocks are oscillators). The statement above, made in reference to Magar, makes sense because Magar did not have an on-chip oscillator, rather it only contained the on-chip CLOCK GEN circuitry. Thus, the statement above does not support Judge Grewal's construction that the "entire oscillator" is not "fixed by any off-chip oscillator" simply because the Applicants did not disclaim any interaction between an off-chip oscillator and an on-chip oscillator.

Judge Grewal continues that "applicants also argued that the Magar clock could not practice the claimed invention because of its reliance on a crystal, which by its nature cannot vary its oscillation frequency." R&R at 4. In support of this argument, Judge Grewal cites to Applicants' argument found in the R&R at 4-5. See Ex. K at 4. But once again, the statement by the Applicants does not support Judge Grewal's construction. Specifically, there is no mention of an off-chip oscillator having any involvement with an on-chip oscillator. This makes sense

because Magar is a single-oscillator system. Applicants could not have disclaimed that the '336 Patent's oscillator's frequency "is not fixed by any external crystal" because there was no opportunity to do so, and they did not make such a clear, unambiguous statement at the USPTO.

Judge Grewal notes that the USPTO "issued a second rejection based on Magar, and the Applicants responded by emphasizing again that the claimed invention did not rely on an external crystal's fixed frequency to set the clock's frequency rate." R&R at 5. Judge Grewal cites the statement from the prosecution history found in the R&R at 5, lns. 8-10 for support. *See* Ex. L, February 10, 1998 Office Action Response at 4. But, the cited passage does not support the construction promoted by Judge Grewal. Although Applicants state that the frequency originates from an external crystal, they do not say anything about fixing a frequency of an on-chip oscillator.

Lastly, Judge Grewal states that "[t]he applicants also disclaimed the use of an external crystal to cause clock signal oscillation," citing a final passage from the prosecution history for support. See R&R at 5, citing Ex. L at 3. Here, as before, there is no oscillator on the Magar chip that can be controlled by the off-chip oscillator. Applicants clarify that the "clock generator" is not an entire oscillator in itself. They argue that Magar shows a crystal which is used to generate a clock, but say nothing of an off-chip oscillator fixing the frequency of an on-chip oscillator.

In the aggregate, the four statements relied upon by Judge Grewal do not and cannot support the disclaimer featured in Judge Grewal's construction. Indeed, Applicants' statements clearly distinguish the present invention from Magar on the basis of limitations already present in the claims at issue (*e.g.*, varying frequency as a "function of parameter variation in one or more fabrication or operational parameters," such as voltage or temperature). Applicants' statements could support a construction that states that the clock signal provided to the CPU does not originate from or is not generated by an external oscillator. As discussed above, there is only a single oscillator in Magar that supplies a clock signal to the CPU, as is there in the claims of the '336 Patent. But, the construction found in the R&R contemplates the interaction of an on-chip oscillator with an off-chip one. The interaction of two oscillators was never discussed with

respect to Magar, because the reference does not contemplate such an arrangement, just as the '336 Patent does not contemplate this arrangement. Yet, Judge Grewal found that, based on Applicants' words, such subject matter was disclaimed. This is clear error: the interaction of two oscillators cannot be disclaimed if Applicants' never mentioned this subject.

Finally, if any disclaimer with respect to Magar is appropriate, it is one that prohibits a clock signal being *generated* from an off-chip oscillator. Not only would a limitation of "not generated by an off-chip oscillator" be more consistent with the arguments presented to the USPTO, it would also be consistent with prior constructions provided by the ITC, Judge Ward in the Eastern District of Texas, and Judge Grewal himself in the HTC case. See Ex. B at 16, chart listing prior claim constructions.

## 2. Sheets

The second disclaimer found in Judge Grewal's "entire oscillator" construction concerns statements made by the Applicant in securing allowance of the '336 Patent over Sheets. Based on these statements, Judge Grewal found that the claimed "entire oscillator" term cannot "require a control signal." But, a close review of the statements made by Applicant reveals that the Applicants made no such disavowal. Further, even if Applicant did disclaim subject matter, the scope of the disclaimer is materially narrower than what was found by Judge Grewal.

Sheets (attached as Ex. M) describes a system in which a "microprocessor controls the clock frequency [of the microprocessor] based on the present rate of required microprocessor activity." Ex. M at Abstract. Thus, the goal of the invention described in Sheets is to save energy by running the microprocessor at a lower clock speed when high performance is not needed (and hence use less power). *Id.* Due to this variable speed processor, Sheets is unlike Magar, whose clock is generated by a fixed frequency crystal.

Sheets accomplishes this goal by having the microprocessor periodically determine its processing load. If the load is low, the microprocessor will reduce the clock frequency at which it is driven. *Id.* at 1:45-57. Sheets achieves this reduction in clock frequency by operating with a digital voltage controlled oscillator ("VCO"). *Id.* at 2:54-57. This oscillator generates the clock signal used by the microprocessor in Sheets. *Id.*

In simpler terms, the computer system in Sheets can speed up or slow down based on how much work it has to do. When the system runs faster, it consumes more power, but can process more data. When it runs slower, it consumes less power, but processes less data. The processor in Sheets makes the determination of how much work is queued up, then sets the VCO (which directly determines how fast/slow the system runs) accordingly.

The processor in Sheets causes the VCO to generate a clock speed at a particular frequency by writing a "digital word" to the VCO. *Id.* at 1:60-68. As used in Sheets, a "digital word" is simply a digital value (e.g., 234). Sheets makes clear that the processor writes the digital word to the VCO in the same manner as the word would be written to RAM. So, just as the processor can write/store data to memory, it can write digital data to the VCO. This digital word is stored by the VCO and then used to compute the clock rate output by the VCO.

Judge Grewal's R&R focuses on three paragraphs from the '336 Patent's file history regarding Sheets. See R&R at 5-6, citing Ex. N, at 8, Ex. O, at 4, and Ex. K at 5. These paragraphs are the (apparent) basis for Judge Grewal's finding of disclaimer and are the same passages cited by Defendants in their briefs. Relying on these paragraphs, Judge Grewal crafted a construction that excludes oscillators that "require a control signal" from the scope of the Asserted Claims, finding that Applicants disclaimed such material.

Plaintiffs disagree that these three paragraphs evidence any disclaimer, let alone a disclaimer of the scope found by Judge Grewal. As discussed in Plaintiff's responsive brief (see Ex. E at 9-14), Applicants' statements to the USPTO regarding Sheets evidence no more than the fact that Sheets does not meet the literal language of what became the Asserted Claims. The doctrine of prosecution disclaimer is meant to exclude subject matter that would otherwise be within the scope of the claims, but for the disclaimers. In Sheets, there is no disclosure of how Sheets' oscillator can vary other than by having a digital word written to it. Thus, the Sheets processor does not vary as a function of environmental or fabrication parameters, which is explicitly required by the Asserted Claims. For this reason, Applicants' comments should not be read to disclaim subject matter that would otherwise be within the scope of the claims.

As Defendants repeatedly state, disclaimers that originate in prosecution arise from the words used by Applicants. Assuming arguendo that Applicants disclaimed subject matter in arguing for the allowance of the Asserted Claims over Sheets, the disclaimer found by Judge Grewal goes far beyond what Applicants actually stated.

This disclaimer found by Judge Grewal is defective in two important aspects. First, it applies to "control signals" generally. The universe of what can be considered a "control signal" is large when compared to the specific inputs at issue in Sheets. Plaintiffs believe it is improper to saddle Plaintiffs with the difference in scope between Sheet's signals/inputs and general "control signals" because Applicants never discussed "control signals" in the abstract, instead specifically referring to ***Sheet's system for providing*** control signals."[5] That fact alone demonstrates that Judge Grewal's finding of disclaimer with respect to all "control signals" is not proper.

Second, Judge Grewal's construction prohibits the "entire oscillator" from "requiring" a "control signal" for ostensibly any purpose. Again, as the cited arguments make clear, whatever input/signals that were being disclaimed were only being used for the purposes of <u>changing the frequency/clock speed of the "external clock"</u> at issue. A control signal could possibly be used in conjunction with an oscillator for a number of reasons other than to control the speed of the oscillator. Again, if Applicants' words are to form the basis of the alleged disclaimers, the scope of the disclaimers must be commensurate with what was actually said. In this case, the scope of Applicants' comments is limited to using specific inputs for changing the frequency of an oscillator. Thus, finding disclaimer for the use of "control signals" for purposes other than changing the frequency of the oscillator goes well beyond Applicants' words and is improper.

A proper disclaimer should not be based on some judicially-created abstraction of Applicants' comments. Applicants' specific statements refer to command, programmed, or manual control inputs to change the frequency of the oscillator. To the extent any clear and

---

[5] Applicants did refer to "Sheets' system for providing clock control signals to an external clock . . . ." in the paragraph cited in the R&R on pp. 5-6. This reference to control signals was clearly limited to the ones discussed in Sheets and not to "control signals" generally.

unmistakable disclaimer was made, which Plaintiffs strongly dispute, it would necessarily relate to only this subject matter.

Turning now to the particular words used by Applicants in discussing Sheets, the first citation relied upon by Judge Grewal distinguishes Sheets from the Asserted Claims based on the "control information" found in Sheets. The discussion in this paragraph is not a generalized discussion of "control information." Rather, it is specific to the "control information" disclosed in Sheets (*i.e.*, the digital word written by the processor to the VCO).

In the second citation relied upon by Judge Grewal, Applicants characterize the digital word of Sheets as a "command input." If a disclaimer is to be found in this citation, it must be limited to an oscillator that requires "command inputs" to change the frequency. Again, these "command inputs" refer to the disclosure in Sheets of the microprocessor writing a digital value to the VCO. In this paragraph, Applicants did not mention "control signals."

Finally, in the third and last paragraph cited by Judge Grewal with respect to Sheets, Applicants state that the oscillator described in the Asserted Claims "does not require <u>manual or programmed inputs</u> . . . to [vary in frequency]." Again, there is no discussion of "control signals" in this portion of Applicant's response. Rather, on the topic of "inputs", the discussion is limited to "manual or programmed inputs." Thus, like the preceding citations, the statements made by Applicants are far more limited than the disclaimer found by Judge Grewal.

In summary, the R&R finds the term "entire oscillator" does not include oscillators that require a "control signal." This finding is based on Applicants statements in distinguishing over Sheets. But, Applicants' never made such a sweeping disclaimer in the prosecution history. At most, Applicants' statements distinguished the claimed oscillator as one that does not require "command, manual, and programmed inputs" to change its frequency. But even these statements are not clear and unmistakable disclaimers.

## VI.    CONCLUSION

As discussed above, Judge Grewal incorrectly found that Applicants disclaimed subject matter during the prosecution of the patent application that ultimately became the '336 Patent. During that prosecution, Applicants demonstrated that Magar and Sheets both fell outside the

explicit requirements of the then pending claims.  With respect to Magar, the Asserted Claims require the "entire oscillator" to reside on the same chip as the CPU and to vary with the CPU as a function of certain environmental and process related variables.  The quartz oscillator in Magar is neither on-chip nor can it vary like the claimed oscillator.  The same goes for Sheets - it is an off-chip oscillator that is not disclosed as varying like the oscillator recited in the Asserted Claims.  For these reasons, there is simply no cause to find that Applicants disclaimed subject matter that would otherwise be captured by the Asserted Claims.

Further, despite Plaintiffs' beliefs to the contrary, if Applicants did disclaim subject matter that would otherwise be covered by the Asserted Claims, the scope of such disclaimer is much narrower than that found by Judge Grewal.  A review of the statements made by Applicants demonstrates as much.  With respect to Magar, Applicants' statements all centered on the fact that the off-chip quartz oscillator in Magar could not generate a clock signal like the one described in the Asserted Claims.  Thus, a disclaimer finding that the claimed oscillator does not include "external crystals/clocks to <u>generate</u> a clock signal" is more appropriate than the one found in the R&R.  With respect to Sheets, Applicants merely discussed Sheet's use of "command, manual, and programmed inputs" to "change the frequency" of the oscillator in Sheets.  Accordingly, if a disclaimer is to be found with respect to Sheets, it should only exclude oscillators "that require command, manual, or programmed inputs to change frequency."

Dated: October 6, 2015

Respectfully submitted,

/s/ Barry J. Bumgardner

**NELSON BUMGARDNER, P.C.**
Edward R. Nelson, III (*Pro Hac Vice*)
ed@nelbum.com
Brent Nelson Bumgardner (*Pro Hac Vice*)
brent@nelbum.com
Barry J. Bumgardner (*Pro Hac Vice*)
barry@nelbum.com
Thomas Christopher Cecil (*Pro Hac Vice*)
tom@nelbum.com
Stacie Greskowiak McNulty (*Pro Hac Vice*)
stacie@nelbum.com
John Murphy (*Pro Hac Vice*)
murphy@nelbum.com
3131 West 7th Street, Suite 300
Fort Worth, Texas 76107
[Tel.] (817) 377-9111
[Fax] (817) 377-3485

**BANYS, P.C.**
Christopher D. Banys (SBN 230038)
cdb@banyspc.com
Jennifer Lu Gilbert (SBN 255820)
jlg@banyspc.com
Christopher J. Judge (SBN 274418)
cjj@banyspc.com
Richard Cheng-hong Lin (SBN 209233)
rcl@banyspc.com
1032 Elwell Court, Suite 100
Palo Alto, California 94303
[Tel.] (650) 308-8505
[Fax] (650) 353-2202

**ALBRITTON LAW FIRM**
Eric M. Albritton (*Pro Hac Vice*)
ema@emafirm.com
P.O. Box 2649
Longview, Texas 75606
[Tel.] (903) 757-8449
[Fax] (903) 758-7397

**Attorneys for Plaintiff**
**PHOENIX DIGITAL SOLUTIONS LLC**

/s/ Charles T. Hoge (with permission)
**KIRBY NOONAN LANCE & HOGE LLP**
Charles T. Hoge (SBN 110696)
choge@knlh.com
350 Tenth Avenue, Suite 1300
San Diego, California 92101
[Tel.] (619) 231-8666

**Attorneys for Plaintiff**
**PATRIOT SCIENTIFIC CORPORATION**


/s/ William L. Bretschneider (with permission)
**SILICON VALLEY LAW GROUP**
William L. Bretschneider (SBN 144561)
wlb@svlg.com
50 W. San Fernando Street, Suite 750
San Jose, California 95113
[Tel.] (408) 573-5700
[Fax] (408) 573-5701

**Attorneys for Plaintiff**
**TECHNOLOGY PROPERTIES LIMITED LLC**


## CERTIFICATE OF SERVICE

I hereby certify that, on October 6, 2015, I caused the foregoing document to be served on counsel of record via the Court's CM/ECF system.


Dated: October 6, 2015        By:  /s/ *Barry J. Bumgardner*
                                   Barry J. Bumgardner