*(Counsel listed on signature page)*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TECHNOLOGY PROPERTIES LIMITED LLC, et al., | Case No. 3:12-cv-03865-VC |
| Plaintiffs, | **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| v. | DATE:      November 30, 2017 |
| HUAWEI TECHNOLOGIES CO., LTD., et al., | TIME:      10:00 AM |
| Defendants. | PLACE:    Courtroom 4, 17th floor |
| | JUDGE:    Hon. Vince Chhabria |
| TECHNOLOGY PROPERTIES LIMITED LLC, et al., | Case No.  3:12-cv-03876-VC |
| Plaintiffs, | **<u>REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED</u>** |
| v. | |
| ZTE CORPORATION, et al., | |
| Defendants. | |
| TECHNOLOGY PROPERTIES LIMITED LLC, et al., | Case No.  3:12-cv-03877-VC |
| Plaintiffs, | |
| v. | |
| SAMSUNG ELECTRONICS CO., LTD., et al., | |
| Defendants. | |

| | |
|---|---|
| 1 | TECHNOLOGY PROPERTIES LIMITED LLC, et al., | Case No. 3:12-cv-03880-VC |
| 2 | |
| 3 | Plaintiffs, |
| 4 | v. |
| 5 | LG ELECTRONICS, INC., et al., |
| 6 | Defendants. |
| 7 | TECHNOLOGY PROPERTIES LIMITED LLC, et al., | Case No. 3:12-cv-03881-VC |
| 8 | Plaintiffs, |
| 9 | |
| 10 | v. |
| 11 | NINTENDO CO., LTD, et al. |
| 12 | Defendants. |

1 TECHNOLOGY PROPERTIES LIMITED LLC, et al.,

Plaintiffs,

v.

LG ELECTRONICS, INC., et al.,

Defendants.

Case No. 3:12-cv-03880-VC

TECHNOLOGY PROPERTIES LIMITED LLC, et al.,

Plaintiffs,

v.

NINTENDO CO., LTD, et al.

Defendants.

Case No. 3:12-cv-03881-VC

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Case Nos.: 3:12-CV-03865; -03876; -03877; -03880; -03881

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ........................................................................................... 1

II.  PROCEDURAL AND FACTUAL BACKGROUND ....................................... 3

    A.   Procedural History ............................................................................... 3

    B.   Overview Of The '336 Patent .............................................................. 5

    C.   The Accused Products .......................................................................... 6

III. LEGAL STANDARD FOR SUMMARY JUDGMENT ................................. 13

IV.  SUMMARY JUDGMENT SHOULD BE GRANTED IN THIS CASE ......................... 13

    A.   Disclaimer Based On Sheets ............................................................... 14

        1.   The accused oscillators require a command input to change
            frequency ................................................................................... 15

            a.   The accused oscillators output a fixed frequency ....................... 15

            b.   Empirical evidence confirms the PLL's frequency is fixed .......... 16

            c.   A command input is required to change the output
               frequency value of the PLL in the accused products .................. 20

        2.   Each of TPL's four theoretical infringement theories is meritless .......... 22

            a.   TPL's theory regarding frequency variations when the PLL
               is "locked" lacks merit ................................................................ 23

            b.   TPL's infringement theory regarding pre-phase lock
                frequency variations lacks merit ................................................. 25

            c.   TPL's additional infringement theories regarding variation
               during phase lock lack merit ....................................................... 26

            d.   TPL's "thermal throttling" infringement theory lacks merit ......... 27

    B.   Disclaimer Based On Magar ............................................................... 29

        1.   The frequency of the accused oscillators is fixed by an external
            crystal ........................................................................................ 30

        2.   TPL's infringement theories are meritless ...................................... 31

            a.   TPL's theory that the accused oscillators are "inherently
               variable" is incorrect ................................................................... 31

            b.   TPL is incorrect that the PLL's controlled frequency
                changes satisfy the Court's claim construction ........................... 32

               (1)   TPL's contention regarding intentional frequency
                    changes by the PLL is incorrect .......................................... 32

               (2)   TPL's interpretation of "fixed" is incorrect ........................ 34

                   (a)   TPL's interpretation of "fixed" is
                       inconsistent with the specification ........................ 34

                     (b)   TPL's interpretation of "fixed" is
                       inconsistent with its statements during
                       prosecution ........................................................... 35

1

**TABLE OF CONTENTS**
(continued)

**Page**

(c)    TPL's reading of "fixed" is inconsistent with
this Court's and the Federal Circuit's rulings ....... 37

V.    CONCLUSION ............................................................................................. 38

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

5

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ..................................................................................................13

6

7

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ..................................................................................................13

8

*Computer Docking Station Corp. v. Dell, Inc.*,
    519 F.3d 1366 (Fed. Cir. 2008)..................................................................................37

9

10

*Southwall Techs., Inc. v. Cardinal IG Co.*,
    54 F.3d 1570 (Fed. Cir. 1995)....................................................................................37

11

*Tech. Props. Ltd., et al. v. Samsung Elecs. Co., Ltd. et al.*,
    Case No. 12-cv-03877-VC ..........................................................................................2

12

13

*Tech. Props. Ltd. LLC v. Huawei Techs. Co.*,
    849 F.3d 1349 (Fed. Cir. 2017)....................................................................... *passim*

14

**Other Authorities**

15

Fed. R. Civ. P. 56(a)...........................................................................................................13

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on November 30, 2017 at 10:00 a.m., in Courtroom 4 of this Court, located at 450 Golden Gate Avenue, 17th floor, San Francisco, California, 94102, Defendants Huawei Technologies Co., Ltd., Huawei Device Co., Ltd., Huawei Device USA, Inc., Futurewei Technologies, Inc., Huawei Technologies USA, Inc., ZTE Corporation, ZTE (USA) Inc., Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., LG Electronics, Inc., LG Electronics U.S.A., Inc., Nintendo Co., Ltd., and Nintendo of America Inc. (collectively, "Defendants") will move for summary judgment that they do not infringe claims 6, 7, 9, 13, 14 and 15 (the "asserted claims") of U.S. Patent No. 5,809,336 (the "'336 patent").

This motion is based on this Notice of Motion, the attached memorandum of points and authorities in support thereof, the pleadings and documents on file in this case, the declarations of Erik Fuehrer ("Fuehrer Decl."), Dr. Vivek Subramanian ("Subramanian Decl."), Marzio Pedrali-Noy ("Pedrali-Noy Decl."), Dr. Jaegon Lee ("Lee Decl.") and their respective exhibits, and such other evidence and argument as may be presented at the hearing on this motion.

## STATEMENT OF ISSUES TO BE DECIDED

1.     Whether Defendants infringe the asserted claims of the '336 patent.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

This case effectively ended with the Federal Circuit's recent opinion.  The Federal Circuit affirmed this Court's prior construction with only a "minor modification" that the Federal Circuit noted "likely does not affect the outcome of this case."  *Tech. Props. Ltd. LLC v. Huawei Techs. Co.*, 849 F.3d 1349, 1358-60 (Fed. Cir. 2017).  The outcome of this case has not changed: the accused products do not infringe.

Following this Court's claim construction, Plaintiffs (collectively "TPL") stipulated that

-1-   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Case Nos.: 3:12-CV-03865; -03876; -03877; -03880; -03881

Defendants' accused products do not infringe any asserted claim of the '336 patent under this Court's prior claim construction.  Plaintiffs acknowledged that if a court did not reject or "materially modify" the Court's construction this case could not proceed.  Dkt. No. 105[1] at ¶ 5.  The Federal Circuit did neither.  The Federal Circuit's "minor" modification does not change the conclusion that the International Trade Commission, as well as Plaintiffs and its prior counsel, reached years ago --  the accused products do not infringe.

Yet, Plaintiffs now seek to improperly prolong this litigation (through a third-set of new attorneys).  TPL recently served Second Amended Infringement Contentions ("SAIC") that contain an array of newly concocted, factually unsupported infringement theories.  The SAICs are a last ditch and meritless attempt to circumvent an adverse judgment.  TPL never explains how the "minor modification" of this Court's claim construction that "likely does not affect the outcome of this case" now provides a basis to allege new infringement theories regarding the exact same product designs it previously conceded do not infringe.

As established below, the accused products are, and have always been, the antithesis of the claimed invention.  The '336 patent claims a variable speed oscillator whose frequency automatically varies in real time based upon its environmental conditions (including temperature and voltage) without any command input.  In contrast, the accused products specifically are designed and operate to avoid such variations by using an oscillator (1) that operates at a selected one of a limited number of <u>fixed frequencies</u> that are multiples of the fixed frequency of an external crystal and (2) whose selected fixed frequency only can be changed <u>only by using command inputs</u>.  Each of the two reasons provides an independent basis for summary judgment.

The accused products did not infringe under the Court's original construction and do not infringe under the Federal Circuit's "minor modification".  Based on their failure to show any material change in the claim construction, Plaintiffs should be estopped from continuing to pursue

---

[1] Unless otherwise indicated, all docket numbers cited in this brief refer to *Tech. Props. Ltd., et al. v. Samsung Elecs. Co., Ltd. et al.*, Case No. 12-cv-03877-VC.

1    its infringement allegations.

2    **II.    PROCEDURAL AND FACTUAL BACKGROUND**

3         **A.    Procedural History**

4         On July 24, 2012, TPL filed complaints in this Court against each Defendant alleging

5    infringement of United States Patent Nos. 5,440,749 (the "'749 patent"), 5,530,890 (the "'890

6    patent") and 5,809,336 (the "'336 patent").  Dkt. No. 1.[2]  On September 27, 2012, the Court

7    stayed these cases pending resolution of the then co-pending U.S. International Trade

8    Commission ("ITC") investigation initiated by TPL against Defendants alleging infringement of

9    the '336 patent (Inv. No. 337-TA-853, the "853 Investigation").  Dkt. No. 12.  On September 6,

10   2013, the Administrative Law Judge ("ALJ") in the 853 Investigation issued his Initial

11   Determination finding non-infringement of the asserted claims of the '336 patent.  Dkt. No. 20 at

12   5-6.  The full Commission then issued a notice affirming the non-infringement findings and

13   terminating the 853 Investigation.  *Id.*  TPL did not appeal the Commission's final determination

14   to the Federal Circuit.  *Id.*

15        Following the conclusion of the 853 Investigation, this Court set a schedule for these

16   cases, pursuant to which the parties filed claim construction briefs and Judge Grewal held a

17   technology tutorial and claim construction hearing.  Dkt. Nos. 22-23, 94-97, 103.  On September

18   22, 2015, Judge Grewal issued a Claim Construction Report and Recommendation (the

19   "Recommendation") construing the '336 patent claim term "an entire oscillator disposed upon

20   said integrated circuit substrate" (the "entire oscillator" claim limitation) to mean "an [oscillator]

21   located entirely on the same semiconductor substrate as the [central processing unit] that does not

22   require a control signal and whose frequency is not fixed by any external crystal."  Dkt. No. 104.

23   This construction was based on prosecution history disclaimers in light of a Sheets prior art

24   reference (the "does not require a control signal" phrase) and a Magar prior art reference (the

25   _____

26   [2] On July 27, 2015, the parties filed a stipulation dismissing with prejudice TPL's meritless
     claims as to the '749 and '890 patents, leaving the '336 patent the only patent-in-suit.  Dkt. No.

27   91.

28

1    "whose frequency is not fixed by any external crystal" phrase).

2           In light of this construction, which confirmed that Defendants did not infringe the '336

3    patent, the parties moved to stay the litigation pending TPL's anticipated objection to the

4    Recommendation. Dkt. No. 105. In that motion, TPL agreed that if it filed an objection to the

5    Recommendation and this Court did "not reject or materially modify the construction of the term

6    'an entire oscillator disposed upon said integrated circuit substrate,' and thereby accepts the

7    Entire Oscillator Construction," then the parties would request that the Court enter final judgment

8    of non-infringement for Defendants. Dkt. No. 105 at ¶ 5.

9           TPL thereafter filed a motion seeking *de novo* review of the Recommendation's proposed

10   claim construction, which Defendants opposed. Dkt. Nos. 107, 109. The Court's order on the

11   motion adopted Judge Grewal's recommended claim construction without modification. Dkt. No.

12   111. As a direct result, TPL and Defendants stipulated that "all of the accused products of all

13   Defendants in this Action do not infringe the asserted claims of the '336 patent" under the Court's

14   claim construction, and requested that the Court enter final judgment of non-infringement in favor

15   of Defendants. Dkt. No. 112. The Court entered final judgment on November 13, 2015, and TPL

16   appealed the Court's claim construction to the Federal Circuit. Dkt. Nos. 113, 115.

17          On March 3, 2017, the Federal Circuit issued its Opinion. *Tech. Props. Ltd. LLC v.*

18   *Huawei Techs. Co.*, 849 F.3d 1349 (Fed. Cir. 2017). The Federal Circuit affirmed most of this

19   Court's claim construction, making only one "minor modification to the district court's

20   construction," which the Federal Circuit correctly stated "likely does not affect the outcome of

21   this case." *Id*. at 1358-60. The Federal Circuit's construction of the "entire oscillator" claim

22   limitation is "an oscillator located entirely on the same semiconductor substrate as the central

23   processing unit that does not require a command input to change the clock frequency and whose

24   frequency is not fixed by any external crystal." *Id.* at 1360. In other words, the Federal Circuit

25   left unchanged the part of the construction based on the Magar disclaimer and made a "minor

26   modification" to the part based on the Sheets disclaimer, changing "control signal" to "command

27   input to change the clock frequency."

28

1

### B.    Overview Of The '336 Patent

The '336 patent is directed to a microprocessor with a variable-frequency system clock

(the "entire oscillator") that controls the speed of a CPU and is incorporated on the same silicon

substrate as the CPU.  *Tech. Props*, 849 F.3d at 1352-53; Ex. 1 ('336 patent) at cover, 3:26-35,

16:54-17:10.[3]  The variable-speed oscillator's frequency automatically adjusts in real time based

upon the microprocessor's physical and environmental characteristics, including temperature,

voltage and semiconductor manufacturing process quality (referred to as "PVT" parameters), to

track the then-existing processing capabilities of the CPU.  *Id.*  Thus, the oscillator's frequency

varies together with the CPU's frequency.[4]  *Id.*

The patent specification explains that a high speed microprocessor must "operate over

wide temperature ranges, wide voltage swings, and wide variations in semiconductor processing"

that "all affect transistor gate propagation delays."  Ex. 1 at 16:44-48.  As the specification

explains, traditional prior art microprocessor systems are designed with a single fixed-speed clock

for all parts of the system.  *Id.* at 16:48-50, 17:12-13.  By design, this conventional fixed-speed

clock always operates at a fixed speed that is slow enough to ensure error-free operation during

worst-case PVT parameter conditions.  *Id.*  As a result, the traditional prior art microprocessor

systems "must be clocked a factor of two slower than their maximum theoretical performance, so

they will operate properly in worse [sic] case conditions" to ensure that a user always experiences

error-free operation.  *Id.* at 16:48-53.

To avoid the constrained speed of the prior art and to always operate "at the maximum

frequency possible, but never too fast" for the existing PVT parameter conditions, the '336 patent

uses an on-chip "ring counter" (also referred to as a "ring oscillator") variable speed system

clock.  *Id.* at 16:54-17:2.  Unlike a fixed-speed crystal clock, the speed of the ring oscillator clock

---

[3] Unless otherwise specified, the exhibits cited in this brief are attached to the Fuehrer Decl.
[4] The applicants described this automatic frequency variation as crucial to the invention of the '336 patent.  "Crucial to the present invention is that . . . when fabrication and environmental parameters vary, the oscillation or clock frequency and the frequency capability of the driven device will automatically vary together."  Ex. 2 (File History, July 3, 1997 Amendment) at 5.

adjusts automatically in real time as a function of existing PVT parameters to match the CPU's maximum frequency capability under those parameters because the ring oscillator and the CPU are made from the same transistors on the same silicon die. *Id.* at 3:26-34, 16:54-17:10.

Unlike the frequency of a fixed-speed clock, the frequency of the claimed on-chip variable speed oscillator varies significantly as a function of PVT parameters. *Id*. at 16:59-60 ("The ring oscillator frequency is determined by the parameters of temperature, voltage, and process."). For example, the patent specification discloses that the speed of the variable speed clock will be 100 MHz at room temperature, but will slow to 50 MHz if the temperature rises to 70°C (*i.e.*, 158° F). *Id.* at 16:59-63. The oscillator's speed may vary, according to the patent, by as much as a factor of four (*i.e*., by as much as 400%) depending on all three PVT parameters. *Id.* at 17:21-22.

TPL is asserting independent claims 6 and 13 and dependent claims 7, 9, 14 and 15 of the '336 patent against Defendants' accused products. *See, e.g.*, Ex. 4, TPL's First Amended Infringement Contentions to Samsung ("FAIC") at 1. Claims 6 and 13 each recite the "entire oscillator" claim limitation that was construed by the Federal Circuit. Ex. 1 at *Ex Parte* Reexamination Certificate at 2:18-19, 3:34-35.

## C.    The Accused Products

TPL accuses a variety of Defendants' consumer electronic devices of infringing the '336 patent. The accused products are identified by TPL in its Infringment Contentions. Case No. 3:12-cv-03865-VC, Dkt. No. 127 (SAIC), Ex. A; Case No. 3:12-cv-03876-VC, Dkt. No. 131 (SAIC), Ex. A; Case No. 3:12-cv-03877-VC, Dkt. No. 127 (SAIC), Ex. A; Case No. 3:12-cv-03880-VC, Dkt. No. 144 (SAIC), Ex. A; Case No. 3:12-cv-03881-VC, Dkt. No. 128 (SAIC), Ex. A. Each accused product includes a microprocessor. The accused microprocessor for each accused product is also identified in TPL's Second Infringment Contentions. *Id.* Each microprocessor was developed by one of the following six companies: Qualcomm; Samsung; Texas Instruments; nVidia; IBM; and Sharp. TPL contends these microprocessors comprise the "central processing unit" ("CPU") and "entire oscillator" required by the asserted claims. *See, e.g.*, Ex. 4 (FAIC), Ex. 1 at 1-3 (identifying the Qualcomm Snapdragon 400 MSM8930AB chip in the accused Samsung i257 Galaxy S4 Mini as comprising a CPU and an "entire oscillator").

1       Each accused microprocessor includes one or more processor cores, which TPL contends

2   are the claimed CPU.  *See, e.g.*, Ex. 4 (FAIC), Ex. 1 at 1.  The accused microprocessors also

3   include one or more phase-locked loops ("PLLs") that are used to generate the clock for the CPU.

4   TPL contends the PLLs include an oscillator that is the claimed "entire oscillator."  *See, e.g,. id.*

5   at 2-3.

6       Although the microprocessors in the various accused products use different types of PLLs,

7   and although the detailed operation of the PLLs is complex, there is no factual dispute regarding

8   the basic operation of the PLLs in the accused products.  First and foremost, as TPL itself stated

9   in its opening appeal brief to the Federal Circuit, a PLL is a device that generates a "clock signal

10  at a relatively <u>fixed frequency</u>."  Ex. 5 (TPL Appeal Br.) at 20 (emphasis added); *see also* Ex. 6

11  (Subramanian Tr.) at 1212:17-1214:25.  TPL and Defendants also agree – at least at a high level –

12  as to the key components that comprise a PLL, as shown in Exhibit B to TPL's SAIC:



13
14
15
16
17
18
19
20
21
22

23  Dkt. No. 127 (SAIC), Ex. B (excerpted); *see also, e.g.,* Pedrali-Noy Decl., ¶¶ 4-5; Lee Decl. ¶ 15.

24  In the TPL diagram above, the components of the PLL are within the blue box labeled "PLL

25  system."  These components include (1) either a voltage controlled oscillator ("VCO") or a

26
27
28

1    current-controlled oscillator ("ICO"),[5] which TPL refers to as a "ring oscillator,"[6] (2) PLL control

2    circuitry for controlling the frequency of the VCO, and (3) at least one programmable divider,

3    which TPL refers to as a "programmable divisor."

4         As TPL concedes, the oscillator in the PLL in the accused products "is not a free running

5    oscillator, as described in column 17 of the '336 Patent." Ex. 5 (TPL Appeal Br.) at 20.  Rather,

6    it is an oscillator whose frequency is tightly controlled by the PLL control circuitry to provide a

7    stable fixed frequency output.  *Id*; *see also* Ex. 6 (Subramanian Tr.) at 1212:17-1214:25.

8         The VCO in most of the accused products also is fundamentally different than the

9    oscillator described in the '336 patent because the VCO includes two separate voltage inputs.[7]

10   Subramanian Decl., ¶¶ 48-51.  The first voltage input is the "operating voltage input," sometimes

11   referred to as the "supply voltage input."  *Id.* at ¶ 48.  Any semiconductor device must have an

12   operating voltage in order to operate.  *Id.*  The existence of the operating voltage input is so

13   commonly understood that it often is not shown in logic circuit diagrams.  *Id.*  For example, no

14   operating voltage input is shown in either the ring oscillator in Fig. 18 of the '336 patent or in

15   TPL's PLL diagram, but that operating voltage input is necessarily present.  *Id.*  In this regard, the

16   '336 patent specification's discussion of changes in voltage causing frequency variation relates to

17   changes in the operating voltage input.  *Id.*

18        The second VCO voltage input in the accused devices – an input which is not present in

19   _____

20   [5] Although the PLLs in some accused product use VCOs while others use ICOs, and while
     differences exist in the operation of these two types of oscillators, these differences are not

21   material to the issues in this motion.  *See* Dkt. No. 127 (SAIC) at 3 ("this difference is not
     believed to be important").  For simplicity, Defendants hereafter refer to the controlled oscillator

22   in each accused PLL as a "VCO."

23   [6] Defendants dispute that the oscillators in each accused PLL are "ring oscillators," as that term is
     used in the '336 patent.  However, this motion assumes, *in arguendo* and only for purposes of this

24   motion, that the oscillators are ring oscillators as TPL contends.

25   [7] Some of the OMAP chips ██████████████████████████████

26   ████████████████████████████████████████████████████████████

27   ████████████████████████████████████████████████████████

28

the oscillator described in the '336 patent – is the "control voltage input."[8]  Subramanian Decl., ¶

50.  The control voltage is a signal that is separate from the operating voltage.  *Id.*  The role of the

control voltage is to control the frequency of the VCO.[9]  *Id.*  Unlike the frequencies of the free-

running oscillator of the '336 patent – whose frequency changes automatically in real time in

response to PVT changes – the frequency of the VCO in the accused chips is set to one of a

number of fixed frequencies through the use of the control voltage input, which is provided by

other PLL components in response to command inputs provided to the PLL, as established below.

*Id.*  The difference between the single-input oscillator of the '336 patent and the two-input VCOs

of the accused products is represented in the simplified block diagrams shown below.  *Id.*



In the accused products, the clock signal output by the VCO is output by the PLL, as is

depicted above in TPL's SAIC Ex. B.  Dkt. No. 127, Ex. B.  As shown in SAIC Ex. B, the output

of the VCO also is sent to the PLL control circuit via a feedback loop that includes at least one

programmable divisor.  *Id.*  The programmable divisor divides down the frequency output by the

VCO by a fixed value set by software controlling the PLL.  Subramanian Decl., ¶ 44.

Each of the PLLs in the accused microprocessors requires and relies upon an input from

an off-chip crystal oscillator or clock generator, depicted in TPL's SAIC Ex. B as the "quartz

---

[8] In the ICOs, this input is a control current.  *Id.*

[9] The control voltage is also referred as a "command signal."  Ex. 7 (U.S. Pat. No. 9,644,963) at
8:51-53 ("a loop filter configured to . . . provide a PLL command signal to the VCO"); Ex. 8
(U.S. Pat. No. 4,050,006) at 11:31-35 ("voltage controlled oscillator for deriving . . . pulses
whose frequency is a function of an analog command signal"); *see* generally Ex. 9 (Modern
Dictionary of Electronics, 6th ed. 1984) at 178 (defining "command" as "a signal that initiates or
triggers an action in the device that receives the signal"); Subramanian Decl., ¶ 51.

1    crystal" providing a "reference signal" to the PLL control circuit.  *See* Dkt. No. 127 (SAIC) at 2

2    ("Plaintiffs contend that each component and signal shown in the Representative Clocking

3    System is present in each of the Accused Products.").  As TPL explained in its opening appeal

4    brief to the Federal Circuit, the PLL control circuit "uses this reference signal to set the output of

5    the oscillator to a specific frequency."  Ex. 5 (TPL Appeal Br.) at 20-21 (emphasis added); *see*

6    *also* Subramanian Decl., ¶ 45.  In this regard, to set the output frequency of the VCO that is

7    output by the PLL, the PLL control circuit performs a "phase checking" function by comparing

8    the phase of the fixed-frequency reference signal that it receives from the external crystal with the

9    phase of the divided-down signal that it receives through the PLL's feedback loop.  Ex. 6

10   (Subramanian Tr.) at 1152:11-1153:3; Ex. 10 (RDX-4.46C).  Based upon this comparison, the

11   PLL control circuit determines whether the PLL's output frequency must be increased or

12   decreased so that the phase of the divided-down feedback signal received from the programmable

13   divisor remains locked to the phase of the fixed-frequency external crystal.[10]  *Id*.  The PLL

14   control circuit then adjusts a command signal that is output to the control voltage input of the

15   VCO to control the VCO's output frequency to maintain that phase lock.  *Id.*  In this way, the

16   PLL feedback loop compensates for PVT variations to ensure the VCO output frequency is

17   "locked" to a multiple of the fixed-frequency reference signal from the crystal oscillator.

18   Subramanian Decl., ¶ 40.

19        The multiplier by which the PLL multiplies the crystal oscillator fixed-frequency is

20   defined by the values of the one or more programmable divisors in the PLL.  *Id.* at ¶ 45.  For

21   example, if the crystal oscillator operates at 20 MHz, and the programmable divisor is set to 100,

22   the PLL control circuity sets the fixed output frequency of the VCO, and thus the fixed output

23   frequency of the PLL, to the value of 100 times the frequency of the crystal, *i.e.* 2 GHz (so that

24   when the 2GHz signal is divided by 100, the resulting divided-down signal of 20 MHz matches

25   ───────────────────

26   [10] For two signals to remain in phase with each other, they must have the same frequency.  Thus,
     ensuring that the phase of one signal remains locked to the phase of another signal ensures that
27   the two signals have the same frequency.  Subramanian Decl., ¶ 25.

28

1   the 20 MHz frequency of the crystal oscillator).  Subramanian Decl., ¶ 45; *see also* Ex. 5 (TPL

2   Appeal Br.) at 20-21.  Accordingly, for any given PLL, the fixed output frequency of the VCO is

3   a direct mathematical function of the frequency of the crystal oscillator and the values of the

4   programmable divisors.

5       For example, in the 65 nm GP2 PLLs used in certain accused Qualcomm chips, the fixed

6   VCO frequency is defined in Qualcomm documentation by the following mathematical formula:

7   Fout = FVCO / P, where FVCO = 19.2 MHz * (L+M/N)/R.  Ex. 6 (Subramanian Tr.) at 1305:6-

8   1307:19; Ex. 11 (RX-626C) at QTPL 23688-700, 23703; Ex. 12 (RX-1093C) at LGE800ITC

9   92239-45; Ex. 10 (RDX-4.119C).  In this equation, "Fout" is the PLL's output frequency,

10  "FVCO" is the VCO's output frequency, 19.2 MHz is the frequency of the off-chip crystal, and L,

11  M, N, R and P are software configurable values for the programmable divisors in the PLL.  *Id.*

12  Thus, the VCO fixed output frequency is literally a function of the fixed off-chip crystal

13  frequency and the values of the programmable divisor(s).  Similar mathematical formulas define

14  the relationship between the fixed frequency of the external crystal reference and fixed output

15  frequency of the VCO in the other accused Qualcomm chips.  Ex. 6 (Subramanian Tr.) at 1304:6-

16  1307:19; *see also, e.g.*, Ex. 13 (RX-618C) at QTPL 13892-93 (45 nm HF PLLs); Ex. 14 (RX-

17  1051C) at QTPL 13830, 13831-33, Ex. 18 (RX-625C) at QTPL 23325, 23345-50, Ex. 19 (RX-

18  790C) at LGE800ITC 305019-23, Ex. 20 (RX-796C) at ZTE853TPL 763449, 763366-67 (45 nm

19  NT PLLs); Ex. 21 (RX-791C) at 853SAMSUNG00065622-23, 65628, Ex. 22 (RX-619C) at

20  QTPL 14386-87, 14393, 14397-98, Ex. 23 (RX-1007C) at LGE800ITC 307019-20 (28 nm HF

21  PLLs); Ex. 24 (RX-602C); Ex. 14 (RX-1051C); Ex. 10 (RDX-4.118).[11]

22      Similarly, the fixed output frequency of the VCO in the ███████████████████

23  █████████████████████████████████████████████████████████████

24  _____

25  [11] Similar mathematical relationships can also be seen in documentation describing accused

26  products by other manufacturers.  *See, e.g.*, Ex. 26 (NINTPLD000000977) at
    NINTPLD000001016 et seq.; Ex. 28 (NINTPL00032980) at NINTPL00033023; Ex. 27

27  (NINTPL00033308) at NINTPL00033341.

28

1   ████████████████████████████ ██ Ex. 25 (RX-693C) at

2   853SAMSUNG00167077; Ex. 6 (Subramanian Tr.) at 1329:25-1331:2; Ex. 6 (Oklobdzija Tr.) at

3   966:13-969:17; Ex. 16 (RX-690C) at 853SAMSUNG00167113; Ex. 10 (RDX-4.141C); *see also*

4   Ex. 15 (RX-696C) at 853SAMSUNG00167799; Ex. 29 (RX-699C) at 853SAMSUNG0042502;

5   Ex. 30 (RX-694C) at 853SAMSUNG167095-97; Ex. 53 (RX-702C) at 853SAMSUNG00020160.

6   ████████████████████████████████████████████████████

7   ████████████████████████████████████████████████████

8   ██████████████████████████████. *Id.*  Accordingly, the VCO's fixed output frequency is

9   literally a function of the fixed off-chip crystal frequency and the value of the programmable

10  divisors.  Similar formulas define the relationship between the external crystal's fixed frequency

11  and the VCO's fixed frequency in the other accused Samsung chips.  Ex. 6 (Subramanian Tr.) at

12  1329:25-1331:2; Ex. 16 (RX-690C) at 853SAMSUNG00167113; Ex. 30 (RX-694C) at

13  SAMSUNG00167095; Ex. 6 (Oklobdzija Tr.) at 966:13-969:17.

14          Because the VCO output frequency in the PLL is a function of the fixed frequency of the

15  crystal oscillator and the values of the one or more programmable divisors in the PLL, the VCO

16  output frequency only can be changed to a different fixed frequency by changing the values of the

17  programmable divisors.  Subramanian Decl., ¶ 46; *see also* Ex. 6 (Subramanian Tr.) at 1329:25-

18  1331:2; Ex. 6 (Oklobdzija Tr.) at 967:22-970:3.  In the accused chips, the value of the

19  programmable divisor(s) are changed via hardware or software command inputs to set the values

20  of registers associated with the programmable divisors.  For example, the Qualcomm 65nm GP2

21  PLL may receive command inputs that change the value of registers L, M, N, R and P identified

22  in the mathematical equation governing the relationship between the VCO and the crystal's fixed

23  frequency, thus changing the output frequency to a new fixed frequency.  Ex. 6 (Subramanian Tr.)

24  at 1322:20-1324:4; Ex. 11 (RX-626C) at QTPL 23689; *see also* Pedrali-Noy Decl., ¶¶ 5-6.

25  Similarly, the PLLs in the accused Samsung chips ████████████████████████

26  ████████████████████████████████████████████████████

27  ████████████████████████████████████████████████████

28  ████████████████████████ Lee Decl., ¶¶ 15-19; Ex. 6 (Subramanian Tr.) at 1329:25-

1   1331:2; Ex. 6 (Oklobdzija Tr.) at 967:22-970:3; Ex. 16 (RX-690C) at 853SAMSUNG00167120.

2   Output frequency of the PLLs in other accused chips, such as the accused IBM and Sharp chips,

3   is similarly fixed unless changed by hardware or software command inputs.  Ex. 26

4   (NINTPLD000000977) at NINTPLD000001016 et seq.; Ex. 28 (NINTPL00032980) at

5   NINTPL00033023; Ex. 27 (NINTPL00033308) at NINTPL00033341.  Other than changes

6   resulting from such command inputs, the output frequency of the PLL will not change.

7   Subramanian Decl., ¶ 46; *see also* Pedrali-Noy Decl., ¶ 10.

8   ### III.    LEGAL STANDARD FOR SUMMARY JUDGMENT

9          "The court shall grant summary judgment if the movant shows that there is no genuine

10  dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

11  Civ. P. 56(a).  The moving party bears the burden of demonstrating the absence of a genuine issue

12  of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Upon such a showing, the

13  nonmovant must then "come forward with specific facts showing that there is a genuine issue for

14  trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 477 U.S. 317, 587(1986).

15         To defeat a motion for summary judgment, the nonmovant must "do more than simply

16  show that there is some metaphysical doubt as to the material facts."  *Id.* at 586.  The "mere

17  existence of some alleged factual dispute between the parties will not defeat an otherwise

18  properly supported motion for summary judgment," and a factual dispute is genuine only where

19  "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

20  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

21  ### IV.    SUMMARY JUDGMENT SHOULD BE GRANTED IN THIS CASE

22         Summary judgment of non-infringement should be granted because two independent and

23  undisputed facts establish that Defendants' accused products do not practice the "entire

24  oscillator" claim limitation.  Indeed, TPL stipulated to non-infringement under this Court's prior

25  claim construction, to which the Federal Circuit made only a "minor modification" to one aspect

26  of the construction.  The unchanged portion of the construction (based on the Magar disclaimer)

27  on its own leads to a reaffirmation of TPL's stipulation of noninfringement and TPL has not

28  explained how the minor modification to the other aspect of the claim construction (based on the

1    Sheets disclaimer) somehow opens the door to any of its newly hatched, poorly conceived

2    infringement theories.  This is because the accused products' tightly controlled <u>fixed</u> speed PLL

3    clocks are precisely the opposite of the <u>variable</u> speed "entire oscillator" clocks of the '336 patent

4    that automatically change frequencies in real time as PVT conditions change.[12]

5           The Federal Circuit's claim construction, like this Court's prior construction, properly

6    incorporates two distinct negative claim limitations that are based upon TPL's clear and

7    unambiguous disclaimers during prosecution to distinguish the Magar and Sheets prior art

8    references.  *Tech. Props.*, 849 F.3d at 1354-60.  Specifically, to satisfy the Federal Circuit's

9    construction, the accused products must include an oscillator that: (1) "does not require a

10   command input to change the clock frequency," and (2) "whose frequency is not fixed by any

11   external crystal."  *Id*. at 1360.  Neither of these limitations is satisfied by the accused products.

12          Notably, TPL's amended infringement contentions against all Defendants are

13   substantively identical.  *See* Case No. 3:12-cv-03865-VC, Dkt. No. 127 (SAIC); Case No. 3:12-

14   cv-03876-VC, Dkt. No. 131 (SAIC); Case No. 3:12-cv-03877-VC, Dkt. No. 127 (SAIC); Case

15   No. 3:12-cv-03880-VC, Dkt. No. 144 (SAIC); Case No. 3:12-cv-03881-VC, Dkt. No. 128

16   (SAIC).  In particular, TPL's amended contentions are based on its high-level, generalized theory

17   of operation of PLLs, and not on evidence of the actual operation of any Defendant's individual

18   accused products, the accused microprocessors or their PLLs.  *Id*.  As a result, TPL's amended

19   contentions are not Defendant-specific, product-specific, microprocessor-specific, or PLL-

20   specific.  *Id*.

21          **A.     Disclaimer Based On Sheets**

22          The first disclaimer recited in the Federal Circuit's construction is that the entire oscillator

23   "does not require a command input to change the clock frequency."  *Tech. Props.*, 849 F.3d at

24   1360.  This phrase was a "minor modification" to the prior constructions' use of the phrase

25   _____

26   [12] Indeed, in the prior ITC Investigation, both the ALJ and the Commission found that the
     accused products do not practice the "entire oscillator" claim limitation. Ex. 31 (Initial
27   Determination) at 118-132; Ex. 32 (Final Determination) at 27-34.

28

1    "control signal" to capture the prosecution history disclaimer based on the Sheets prior art

2    reference.  The difference between these two phrases, however, is immaterial.

3         In the accused products, the alleged "entire oscillators" – *i.e.*, the VCOs incorporated

4    within PLLs – require a command input to change the clock frequency.  As discussed above and

5    as further established below, PLLs are by design fixed-frequency devices whose VCOs output a

6    stable and fixed frequency.  As TPL conceded in its briefing to the Federal Circuit, the oscillator

7    in a PLL "is not a free running oscillator, as described in column 17 of the '336 Patent."  Ex. 5

8    (TPL Appeal Br.) at 20.  Rather, as TPL acknowledged, a PLL generates a "clock signal at a

9    relatively fixed frequency."  *Id.* at 20.  As established below, while the VCO output frequency

10   may be changed by changing the values of the programmable dividers within the PLL, a

11   command input is required to do so.

12              **1.      The accused oscillators require a command input to change frequency**

13                   **a.      The accused oscillators output a fixed frequency**

14        TPL's amended contentions ignore an important and indisputable point:  a PLL is the

15   antithesis of a variable speed clock.  By its very nature and design, a PLL outputs a very stable

16   fixed frequency.  Ex. 6 (Subramanian Tr.) at 1213:5-10; Ex. 10 (RDX-4.94C).  To achieve this

17   stability, the PLL precisely controls and fixes its output frequency by continuously comparing

18   this output against an accurate and fixed reference signal provided by an external crystal or clock

19   generator.  Ex. 6 (Subramanian Tr.) at 1212:23-1213:14; Ex. 10 (RDX-4.94C).

20        As Defendants' expert Dr. Subramanian explains, a PLL's ability to provide a stable fixed

21   output frequency is analogous to a car's cruise control, which maintains a car's speed regardless

22   of environmental conditions.  Ex. 6 (Subramanian Tr.) at 1214:14-19; Ex. 10 (RDX-4.95C).  For

23   example, a cruise control set to maintain a car's speed at 55 miles per hour will maintain this

24   fixed speed regardless of whether the car is going uphill, downhill, or on a flat surface.  Ex. 6

25   (Subramanian Tr.) at 1214:21-25.  Like a cruise control, the PLL compensates for any PVT

26   effects on its transistors and circuitry, resulting in a fixed-speed clock like the fixed-speed prior

27   art discussed in the patent.  *Id.* at 1212:17-1214:25.

28        Mr. Fish, one of the two named co-inventors on the '336 patent, confirmed that a fixed-

1  speed PLL █████████████████████████████████████████████

2  ████████████████████████████████████████████████████████████

3  ████████████████████████████████████████████████████████████

4  ████████████████████████████████████████████████████████████

5  ████████████████████████████████████████████████████████████

6  ████████████████████████████████████████████████████████████

7  ████████████████████████████████████████████████████████████

8  Ex. 33 (RX-167C (Fish Depo.)) at 237:5-14.  Leaving no doubt on this issue, Mr. Fish further

9  confirmed that █████████████████████████████████████████

10  ████████████████████████████████████████████████████

11  ███████████████████████████████  *Id.* at 231:24-232:7; *see also id.* at 231:12-23

12  ██████████████████████████████████

### b.  Empirical evidence confirms the PLL's frequency is fixed

To confirm the well-known fact that PLLs output a stable fixed frequency, Dr. Subramanian oversaw testing that measured the clock speed in some accused microprocessors. Ex. 6 (Subramanian Tr.) at 1252:1-14; Ex. 10 (RDX-4.103C).  These measurements confirm the PLLs in the accused products do not vary as a function of PVT parameters, but rather output a stable fixed frequency.

First, with respect to the accused Samsung Exynos 4412 chip, Dr. Subramanian empirically measured the clock output frequency over a large temperature range, as well as over a substantial operating voltage range.  Ex. 6 (Subramanian Tr.) at 1215:6-23; Ex. 34 (RX-1179C); Ex. 35 (RX-1181C).[13]  His results appear in the figure below, where the graph on the left shows

---

[13] Dr. Subramanian mounted the chip on a development board, which was available on the open market and which implemented basic phone functionalities. Ex. 6 (Subramanian Tr.) at 1215:6-17.  He used a high-precision and well-calibrated Agilent 53131A frequency counter to characterize the frequency behavior of the chip as a function of temperature or voltage.  *Id.* at 1215:17-1216:8, 1219:8-19 (discussing temperature measurement set-up), 1219:20-25 (same for

frequency as a function of temperature, while the graph on the right depicts frequency as a function of voltage.



| Range | Clock Frequency over Range | Tolerance During Measurement |
|---|---|---|
| 0°C -70°C in five degrees increments | 50.005 MHz* | +/- 0.000648% |
| 1.0V-1.16V in 0.02V increments | 50.005 MHz* | +/- 0.0000237% |

Ex. 10 (RDX-4.97C); Ex. 6 (Subramanian Tr.) at 1216:17-21; Ex. 36 (RX-1180C); Ex. 37 (RX-1182C).  As Dr. Subramanian testified, "if you look at the data, you see that it is effectively flat." Ex. 6 (Subramanian Tr.) at 1217:10-11.  "[T]he key point is, over a large range of testing, 0 to 70°C, and an almost 20 percent change in operating voltage, which is a large change in operating voltage, because these PLLs are driven with precision power sources, we see that the clock frequency basically doesn't move very much. It's extremely flat." *Id.* at 1217:17-24.

Significantly, this level of frequency stability (*i.e.*, ███████████████████ ████████████████████████████████████████████████████████████ ███████████████████████████) is within (or less than) the range of stability exhibited by a crystal oscillator – which the '336 patent states generates a "fixed" frequency. *Id.* at 1217:25-1218:5; Ex. 1 at 17:32-34.  For example, certain modern day high precision crystal oscillators used in complex devices such as the Defendants' accused products exhibit variance on

voltage measurements); Ex. 10 (RDX-4.96C) (showing development board); Ex. 34 (RX-1179C); Ex. 35 (RX-1181C).

-17-    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Case Nos.: 3:12-CV-03865; -03876; -03877; -03880; -03881

the order of 5-10 ppm.  Ex. 6 (Subramanian Tr.) at 1483:14-25, 1244:14-1246:21; *see also* Ex. 6

(Oklobdzija Tr.) at 765:7-12 (describing crystal oscillator variance on the order of 12 ppm).

These modern crystal oscillators produce much more stable frequencies than the crystals available

in 1989, when the '336 patent was effectively filed, which typically exhibited a variance of 100

ppm.  Ex. 6 (Subramanian Tr.) at 1483:14-25.  Yet, the '336 patent described those crystals'

frequencies as "fixed."  *Id.*  For example, the patent contrasts the variable speed oscillator used to

clock the CPU with the "fixed" speed crystal clock used to clock the I/O interface.  Ex. 1 at

17:29-34 (describing the "fixed speed" I/O interface), 17:25-27 (describing the I/O interface

speed as being "controlled by a conventional crystal clock 434").  Similarly, during prosecution

of the '336 patent, the applicants acknowledged that while crystals exhibit minor frequency

variation, they nonetheless are "fixed-frequency" clocks:

> Crystals are by design fixed-frequency devices whose oscillation speed is designed to be
> tightly controlled and to vary minimally due to variations in  manufacturing, operating
> voltage and temperature.

Ex. 3 ('336 patent prosecution history, April 15, 1996 Amendment) at 4; *see also* Ex. 33 (RX-

167C (Fish Depo.)) at 145:21-24 ███████████████████████████████

████████ .

    Dr. Subramanian further confirmed the stability of the PLL's frequency by calculating

tolerance (*i.e.*, the variability associated with the measurements).  Ex. 6 (Subramanian Tr.) at

1218:8-10.  As shown in the table on RDX-4.97, ███████████████████████████

███████████████████████ *Id.* at 1218:16-18; Ex. 10 (RDX-4.97C); Ex. 36 (RX-1180C); Ex. 37 (RX-

1182C).  Thus, Dr. Subramanian's measurements demonstrate that the PLL outputs an extremely

stable frequency that is, according to the teaching of the '336 patent and the understanding of the

'336 patent inventors, fixed.

    Second, Dr. Subramanian empirically measured the PLL frequency of the accused

Samsung S5PC210 chip as a function of voltage or temperature by using the same procedure and

set-up used for the Exynos chip.  Ex. 6 (Subramanian Tr.) at 1218:22-1219:5, 1220:24-1221:4;

Ex. 10 (RDX-4.98C); Ex. 38 (RX-1183C); Ex. 39 (RX-1185C).  As with the Exynos chip, the test

1   data for the S5PC210 chip, as shown in Exhibit 10 (RDX-4.98C), shows no variation over a

2   temperature range of 0 to 80 degrees Celsius or over a voltage range of 0.95V to 1.20V.  Ex. 6

3   (Subramanian Tr.) at 1220:10-1221:7; Ex. 40 (RX-1184C); Ex. 41 (RX-1186C); Ex. 10 (RDX-

4   4.99C).  And, as with the testing of the Exynos chip, the tolerance for the temperature

5   measurement was a tiny +/- 0.000592% (████████████████████████████████████████████

6   ███████████████████████████████████████████████████████████████████████

7   ██████████████████████████████████████████████).  *Id.*  As Dr.

8   Subramanian noted, the data "shows that the frequency is essentially flat as a function of

9   temperature" and "similarly, the frequency is essentially flat as a function of voltage."  Ex. 6

10  (Subramanian Tr.) at 1220:19-22.

11          Third, Dr. Subramanian performed measurements on the accused Qualcomm QSC6055

12  chip as used in an actual phone.  This testing, the results of which are depicted in Exhibit 10

13  (RDX-4.100C), established that the clock frequency was flat as a function of temperature.  Ex. 6

14  (Subramanian Tr.) at 1221:8-1224:2; Ex. 10 (RDX-4.100C); Ex. 42 (RX-1187C); Ex. 43 (RX-

15  1188C).  Because this chip was inside an operating mobile phone, Dr. Subramanian measured the

16  camera clock frequency as a proxy for the PLL's output, because this frequency originates from

17  the same PLL associated with the ARM core.  Ex. 6 (Subramanian Tr.) at 1221:22-1222:4; Ex. 24

18  (RX-602C) at LGE800ITC 1914-16, 1918.  The measured camera clock frequency – which is a

19  fixed fraction of the actual on-chip PLL frequency – was "incredibly flat" over the temperature

20  range of 0-50 degrees Celsius, with a tolerance of +/-0.000015% (or less than 1 ppm over the

21  measured temperature range).  Ex. 6 (Subramanian Tr.) at1222:25-1223:8; Ex. 42 (RX-1187C);

22  Ex. 43 (RX-1188C); Ex. 10 (RDX-4.100C).

23          Finally, Dr. Subramanian measured the frequency output of the PLL in the Qualcomm

24  MSM8960 chip by using a development board from Qualcomm.  Ex. 6 (Subramanian Tr.) at

25  1224:3-1225:19; Ex. 10 (RDX-4.101C); Ex. 44 (RX-1189C); Ex. 45 (RX-1190C).  This

26  Qualcomm development board provides a terminated output that allows direct measurement of

27  the PLL frequency without needing a fixed-ratio division as was needed with the other chips.  Ex.

28  6 (Subramanian Tr.) at 1224:13-24.  As a result, Dr. Subramanian was able to measure the PLL's

1   full 1.5 GHz frequency over a large temperature range from 0 to 50 degrees Celsius with a

2   tolerance of +/- 0.000619% (approximately 6 ppm variation over the measured temperature

3   range).  *Id.* at 1225:1-10; Ex. 44 (RX-1189C); Ex. 45 (RX-1190C).  As shown by the test data

4   (depicted in RDX-4.101), the PLL's output was "completely flat" and was "incredibly stable over

5   the temperature range that we could do."  Ex. 6 (Subramanian Tr.) at 1225:2-4.  Indeed, the data

6   shows that any possible fluctuation was "basically in the range of what the crystal can provide,"

7   in other words, within what the '336 patent considers a "fixed" frequency.  *Id.* at 1225:18-19; Ex.

8   10 (RDX-4.101C); Ex. 44 (RX-1189C); Ex. 45 (RX-1190C).  Thus, as the empirical evidence

9   clearly demonstrates, "the PLL does exactly what it should," namely, it  outputs a frequency that

10  "does not vary" and "is extremely stable."  Ex. 6 (Subramanian Tr.) at 1226:6-14 *see also*

11  Subramanian Decl. ¶¶ 54-69.

12      In contrast with the fixed frequency output by the PLLs in the accused products, the '336

13  patent teaches that the frequency of its claimed variable speed clock will change by as much as

14  400% due to changes in PVT conditions.  Ex. 1 at 17:21-22 ("factor of four").  The '336 patent

15  also teaches that the frequency of its claimed clock changes by 100% with changes in temperature

16  alone, varying from 50 MHz at 70°C to 100 MHz at room temperature (~22°C).  *Id.* at 16:60-63,

17  17:21-22; Ex. 10 (RDX-4.93C).  By contrast, over this same temperature range, Dr.

18  Subramanian's empirical measurements showed no detectable variation.  Ex. 10 (RDX-4.97-

19  101C).

20      In summary, Dr. Subramanian's empirical testing confirmed that the frequencies output by

21  the PLLs in the accused products are fixed.  TPL never has offered any empirical testing to the

22  contrary.

23          **c.    A command input is required to change the output frequency
                    value of the PLL in the accused products**

24

25      As established above in Section II.C, the output frequency of the PLL is a function of

26  frequency of the crystal oscillator and the values of one or more programmable divisors.  The

    programmable divisors can be programmed to change the output frequency of the PLL.

27

28  However, contrary to the Federal Circuit's construction, the PLL requires a command input to do

1   so.

2           In the microprocessors in the accused products, the value of the programmable divisor(s)

3   are changed via commands to set the values of registers associated with the programmable

4   dividers.  Subramanian Decl., ¶¶ 44-46; *see also* Ex. 6 (Subramanian Tr.) at 1329:25-1331:2; Ex.

5   6 (Oklobdzija Tr.) at 967:22-970:3.  For example, the Qualcomm 65nm GP2 PLL discussed

6   above receives command inputs that set the value of registers L, M, N, R and P identified in the

7   mathematical equation governing the relationship between the VCO and the crystal's frequency,

8   and the output frequency is changed when those values are changed.  Ex. 6 (Subramanian Tr.) at

9   1322:20-1324:4; Ex. 11 (RX-626C) at QTPL 23689; Ex. 13 (RX-618C) at QTPL 13872-76,

10  13892-93, 13899-902; Ex. 10 (RDX-4.133C); Ex. 10 (RDX-4.134C) *see also* Pedrali-Noy Decl.,

11  ¶¶ 5-6.  Similarly, the PLLs in the accused Samsung chips receive command inputs ██████████

12  ███████████████████████████████████████████████████████████████████████████

13  ███████████████████████████████████████████████████████████████████████████████

14  ███████████████████████           Lee Decl., ¶¶ 15-19; Ex. 6 (Subramanian Tr.) at 1329:25-1331:2;

15  Ex. 6 (Oklobdzija Tr.) at 967:22-970:3; Ex. 16 (RX-690C) at 853SAMSUNG00167120.  Output

16  frequency of the PLLs in other accused chips, such as the accused IBM and Sharp chips, is

17  similarly fixed unless changed by hardware or software command inputs.  Ex. 26

18  (NINTPLD000000977) at NINTPLD000001016 et seq.; Ex. 28 (NINTPL00032980) at

19  NINTPL00033023; Ex. 27 (NINTPL00033308) at NINTPL00033341.

20          TPL does not appear to dispute that a command input is required to set the value of the

21  programmable divisors in a PLL.  *See, e.g.*, Dkt. No. 127 (SAIC) at 5 (assuming *arguendo* that

22  "the writing of a value to the Programmable Divisor on the Feedback Loop of the PLL System is

23  a 'command input'…"), 9 (contending that thermal throttling in the accused products infringes

24  "to the extent that [it] is accomplished by some means other than altering the value of the

25  Programmable Divisor.").  Indeed, the prior art Sheets reference TPL distinguished during

26  prosecution of the '336 patent – on the grounds that the Sheets device required a command input

27  to change the clock frequency –  utilized the same type of command input to control its voltage-

28  controlled oscillator as do the PLLs in the accused products.  Subramanian Decl., ¶ 44.

1    Specifically, Sheets discloses changing frequency of the VCO by writing a "digital word defined

2    by that frequency… to a register 601." Ex. 47 (Sheets) at 3:58-61; 4:43-48 (same); Subramanian

3    Decl., ¶ 44 (a "digital word" is simply a digital value that corresponds to the desired frequency).

4            In short, a command input in the form of a digital value written to one or more registers in

5    the accused PLLs is required to change the values of the programmable divisors, which changes

6    the frequency of the VCO, the alleged "entire oscillator."

7            The control voltage signal connected to the control voltage input of the VCO is another

8    command input required to change the frequency of the VCO.  As established above, this signal

9    directly controls the frequency of the VCO.  Section II.C, *supra*; Subramanian Decl., ¶ 50.

10   Because the control voltage signal directly controls the frequency of the VCO, this signal must

11   change in order for the frequency of the VCO to change from one fixed frequency to another

12   fixed frequency in response to a change in the programmable divider.  *Id.*  Additionally, because

13   the control voltage signal is a command signal, it is a command input.  *See* Ex. 9 (Modern

14   Dictionary of Electronics, 6th ed. 1984) at 495 (defining "input" as "the current, voltage, power or

15   other driving force applied to a circuit or device."); Subramanian Decl., ¶ 51.  Thus, the control

16   voltage is another "command input" that is required to change the frequency of the VCO.

17           TPL cites no evidence that the frequency of the PLL's VCO can be changed in any way

18   other than as decribed above.  Accordingly, because the PLL's VCO requires command inputs to

19   change the clock frequency, it does not satisfy the Federal Circuit's construction, which requires

20   that the entire oscillator "does not require a command input to change the clock frequency."

21                 **2.        Each of TPL's four theoretical infringement theories is meritless**

22           Rather than dismissing its infringement claims in light of the Federal Circuit's claim

23   construction and the undisputed operation of the accused products, TPL's SAIC offers four purely

24   theoretical contentions regarding how the accused products allegedly might fail to satisfy the

25   requirement that the entire oscillator "does not require a command input to change the clock

26   frequency."  Dkt. No. 127 (SAIC) at 4-8.  None of these contentions has merit.

27

28

a.      **TPL's theory regarding frequency variations when the PLL is "locked" lacks merit**

TPL first contends that changes to the supply voltage, or to the temperature of the chip on which the PLL is located, will cause the frequency to vary when the PLL is "locked," and that the PLL control circuitry will compensate for that variation in order to force the frequency of the PLL back to the desired frequency.  Dkt. No. 127 (SAIC) at 5-7.  TPL contends these <u>alleged</u> changes in frequency do not result from a command input.  *Id*.  This argument, however, wholly ignores the above-cited uncontradicted evidence that any such <u>alleged</u> variations in the frequency of the VCO in the actual accused products would:  (1) be extremely small; (2) fall well within the range that the '336 patent and its inventors consider to be a "fixed-frequency"; and (3) bear no relationship whatsoever to the frequency changes that the '336 patent describes as occurring in the claimed variable speed clock as the result of changes in PVT factors.  *See* Section IV.A.1.b, *supra*.

Moreover, the tiny variations seen in Dr. Subramanian's testing are at the precision limit of the Agilent frequency counter used to conduct these tests.  Ex. 6 (Subramanian Tr.) at 1482:14-15.  As Dr. Subramanian explained, "[t]his is all at the precision limit of the instrument.  This is flat."  *Id.*; *see also id.* at 1243:1-1244:10, 1481:4-9, 1482:16-23.  In light of the instrument's detection limit and the microscopic nature of the fluctuations, what appears as a possible variation of 5-10 ppm for the tested chip may actually reflect no variation at all.  Accordingly, as Dr. Subramanian established, there is no statistically significant variation in the measured PLL output frequency: "This is statistically flat."  *Id.* at 1481:4-9.  Because there is in fact no meaningful variation in PLL output frequency as a result of changes in supply voltage or temperature, TPL's contention that the frequency output by the PLL varies as a function of these factors lacks merit.

Notably, TPL's SAIC cites no evidence showing that the frequency output by the VCOs in the accused products actually varies as a result of operating voltage or operating temperature changes.  Dkt. No. 127 (SAIC) at 5-7.  Instead, TPL relies upon a "hypothetical example" describing the alleged operation of a hypothetical PLL.  *Id.* at 5.  While TPL's "hypothetical example" accurately describes the manner in which PLL circuitry controls the frequency of its

-23-      DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Case Nos.: 3:12-CV-03865; -03876; -03877; -03880; -03881

1  VCO, it greatly overstates (without any support) the magnitude of any alleged VCO frequency

2  changes in an actual PLL.  Subramanian Decl., ¶ 70.  Indeed, in its contentions, TPL concedes

3  that "[i]n actuality, the adjustments [in the hypothetical example]… occur nearly in real time and

4  may be much smaller in magnitude than described."  Dkt. No. 127 (SAIC) at 6 (emphasis added).

5  In fact, as established above, Dr. Subramanian's testing (of which TPL was well aware when it

6  authored its SAIC) confirms that there is no statistically significant frequency variation in the

7  accused products.  And, to the extent the frequency of the VCO in the accused PLLs may exhibit

8  tiny frequency variations, these variations are well within the range of the frequency of crystal

9  oscillators, which the '336 patent and its inventors consider a "fixed-frequency."

10      TPL's SAIC also contends that the "cumulative adjustments made to the frequency of the

11  PLL . . . may be in the tens or hundreds of megahertz as the temperature of the Ring Oscillator

12  changes."  Dkt. No. 127 (SAIC) at 6 (emphasis added).  Again, TPL cites no evidence to support

13  this contention.  Id.  Moreover, TPL cites no support in either the '336 patent or the Federal

14  Circuit's claim construction that would permit TPL to aggregate any minute frequency changes

15  that might occur over time to arrive at a "cumulative" total that bears no relationship to any actual

16  alleged frequency change.  In this regard, there is no teaching in the '336 patent that any tiny

17  frequency variations that accumulate over a long period of time somehow cumulatively constitute

18  a frequency variation in response to voltage or temperature changes.  See also Subramanian Decl.,

19  ¶¶ 71-74 (confirming that the notion of "cumulative adjustments" is not supported by the '336

20  patent or by the understanding of one skilled in the art).  In this regard, if one were to accumulate

21  the frequency variations of a crystal over a long enough time period, one could obtain a

22  cumulative value in the tens or hundreds of megahertz, but, as established above, the '336 patent

23  considers the frequency of a crystal to be fixed within the meaning of the claimed invention.  Id.

24  at ¶ 74.

25      TPL also relies upon two articles, which TPL contends demonstrate that a VCO in a PLL

26  necessarily varies in response to changes in supply voltage and temperature.  Dkt. No. 127

27  (SAIC) at 6 (citing SAIC, Ex. D ("Kos article") and SAIC, Ex. E ("Marin article")).  However,

28  these articles establish nothing more than that the frequency of the particular VCOs that were the

subject of the articles (which are not present in the accused products) varied when there <u>was</u>

<u>nothing in place (such as a PLL)</u> to control the frequency, *i.e.*, "when the control voltage is held

steady" or "without any compensation scheme." Dkt. No. 127 (SAIC) at 6. These articles are

irrelevant to the application of the asserted patent claims to the accused products. As established

above, the frequency of the VCOs in the accused products <u>is controlled</u> by control circuitry in the

PLLs. *See* Section II.C, *supra*; Subramanian Decl., ¶ 76. In rejecting this same argument raised

by TPL, the ALJ in the prior ITC Investigation astutely noted that "[b]y focusing on a theoretical

paper using statistical modeling, Dr. Oklobdzija misses a simple truth, which is that a PLL

compensates for any PVT effects on transistors in order to keep the output frequency stable and

fixed." Ex. 31 (Initial Determination) at 205 (citing Subramanian Tr. at 1255).

TPL further contends that a PLL "first detects that the frequency has moved outside the

predetermined range, then corrects it." Dkt. No. 127 (SAIC) at 6. However, TPL offers no

evidence that the PLLs in the accused products actually function by determining whether the

VCO frequency is within a "predetermined range." *Id.* And the evidence establishes that they do

not. *See, e.g.*, Pedrali-Noy Decl. ¶¶ 7-9 ███████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████ Lee Decl. ¶¶23-27 (█████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████; Ex. 17 (PLL Manual) at 2-3. Moreover, as established

above, even if TPL were correct, any alleged tiny variation in frequency resulting from any such

"predetermined range" is the type of insignificant variation that the '336 patent and its inventors

consider fixed.

        **b.**    **TPL's infringement theory regarding pre-phase lock frequency variations lacks merit**

TPL next contends that frequency variations may occur in a PLL before it is locked to a

desired frequency, either during power up or during a state change (*i.e.*, a change in the value of a

programmable divisor), and that these frequency variations do not require a command input to

change the clock frequency. Dkt. No. 127 (SAIC) at 7. However, any frequency variations

1   during an unlocked state are irrelevant, because in order for such frequency variations to occur, a

2   command input is required.  Start-up does not occur unless a user presses a button, which

3   necessarily results in a command input to the accused products' power supply.  Subramanian

4   Decl., ¶ 75.  State change also requires a command input be written to a programmable divisor in

5   the PLL, as established above.  *See* Sections II.C and IV.A.1.c, *supra*.  Because a command input

6   is required for these alleged frequency variations, they are within the scope of the Sheets

7   disclaimer.

8           Furthermore, there is no evidence that the PLLs in accused products are connected to the

9   CPU or clock the CPU at a clock rate (i.e., a clock frequency) when in an unlocked state.  Claims

10  6 and 13 each recite:

11

12      an entire oscillator disposed upon said integrated circuit substrate and ***connected to said
        central processing unit***, ***said oscillator clocking said central processing unit*** at a clock
13      rate

14  Ex. 1 at claims 6, 13 (emphasis added).  TPL offers no evidence that the PLLs in the accused

15  products are connected to provide clocking signals to the CPU when they are not locked.  SAIC at

16  7.  To the contrary, the evidence establishes that the PLLs in at least the Samsung accused

17  processors ███████████████████████████████████.  *See, e.g.*, Lee Decl.

18  ¶¶ 20-22; Ex. 15 (RX-696C) at 853SAMSUNG001676 (████████████████████

19  ████████████████████████████████████████████████

20  ████████████████████████████.").  Unless a PLL in an unlocked state

21  is connected to the CPU in the accused products, any frequency variation in an unlocked state is

22  irrelevant in analyzing whether the claims are practiced because the independent claims expressly

23  require the entire oscillator to clock the CPU.  Ex. 1 at claims 6, 13.

24              c.      **TPL's additional infringement theories regarding variation
                        during phase lock lack merit**
25
        TPL next asserts two additional infringement theories regarding alleged variation in VCO
26
    frequency when the PLL is locked.  Dkt. No. 127 (SAIC) at 7-8.  Neither contention has merit.
27
        First, TPL asserts the frequency of the VCO in a PLL inherently changes in response to
28

1    changes in PVT, without citing any evidence of the actual operation of the VCOs and PLLs in the

2    accused products.  *Id.*  As established above, the VCO/PLL output frequency in the accused

3    products does not vary with changes in PVT parameters.  *See* Sections II.C and IV.A.1.a and b,

4    *supra*.  TPL's first theory thus lacks merit.

5         Second, TPL asserts that as a result of the difference between the frequency of the crystal

6    and the VCO frequency, the VCO in the PLL is "free running" (*i.e.*, not frequency-controlled by

7    the PLL) for every N-1 clock cycles, where N is the multiplication factor applied by the PLL.

8    Dkt. No. 127 (SAIC) at 8.  TPL further asserts that during these allegedly "free running" periods

9    of time, the VCO frequency "can change" in response to changes in supply voltage and

10   temperature.  *Id.*

11        TPL cites no evidence, empirical or otherwise, in support of this second argument.  *Id.*

12   The argument is wrong because the control signal from the PLL is being applied to the VCO

13   during each of the N clock cycles, so the VCO is not "free running" during any of the N clock

14   cycles.  Subramanian Decl. ¶ 76.  Moreover, as established above, empirical evidence of the

15   accused chips in actual operation confirms that the frequency output by the VCO does not change

16   as a result of voltage and temperature variations.  *See* Sections II.C and IV.A.1.a and b, *supra*; *see*

17   *also* Subramanian Decl. ¶¶ 54-69.  In summary, no evidence supports TPL's second theory, while

18   undisputed evidence disproves it.

19            **d.      TPL's "thermal throttling" infringement theory lacks merit**

20        Finally, TPL advances the unfounded theory that the accused products ***may*** implement

21   thermal throttling and that this thermal throttling ***may*** be implemented without a command input.

22   Dkt. No. 127 (SAIC) at 8-9.  Specifically, TPL contends that "to the extent that this thermal

23   throttling is accomplished by some means other than altering the value of the Programmable

24   Divisor in the PLL," it falls outside the Sheets disclaimer in the claim construction.  *Id.* at 8.  This

25   speculative theory fails in the first instance because TPL cites no evidence that such thermal

26   throttling would be implemented using any method other than by command input (*i.e.*, modifying

27   the values of the programmable divisors in the accused PLLs, which TPL acknowledges would be

28   non-infringing).  Dkt. No. 127 (SAIC) at 8-9.

1    TPL's contention relies solely on an article describing a Qualcomm smartphone that was

2    modified to include a thermal throttling algorithm.  *Id.* (citing SAIC, Ex. F ("Coskun article"));

3    Coskun article at 4 ("Our target experimental platform is a state-of-the-art Qualcomm Snapdagon

4    MSM8974 smartphone…"), 5 (describing implementation of thermal throttling as a "user-level

5    [software] program"); Subramanian Decl., ¶ 77.  However, the Coskun article provides no basis

6    to conclude that thermal throttling would be implemented in any way other than by the command

7    input.  Subramanian Decl., ¶ 77.  Indeed, the Coskun article describes implementing thermal

8    throttling by using dynamic voltage frequency scaling ("DVFS") to change the CPU clock

9    frequency between several fixed frequencies.  *See, e.g.*, Dkt. No. 127 (SAIC), Ex. F (Coskun

10   article) at 3 ("the CPU can only support discrete DVFS level.  We propose a DVFS state

11   scheduler which … switches between two neighbor frequency levels …"); Subramanian Decl., ¶

12   77.  Using DVFS to switch between fixed frequency levels is entirely consistent with an

13   implementation in which the frequency levels are selected by changing the values of a PLLs

14   programmable dividers.  *Id.*  For example, DVFS is a software feature that allows a chip to

15   "choose what frequency it should run at."  Ex. 6 (Subramanian Tr.) at 1267:11-1270:10; Ex. 10

16   (RDX-4.110C); Ex. 46 (RX-1817C) at Garmin068424.  Because there is a mathematical formula

17   that defines the output frequency of a PLL as a function of the crystal reference frequency and the

18   values of programmable dividers, "one can change the frequencies of course by changing the

19   crystal, but that's not relevant here.  The other way you can change it is by changing the equation

20   on the PLL … because that has those values L, M, N.  You can change those values or any other

21   dividers values to set the frequency at which a chip runs."  *Id.*  All of these changes require

22   command inputs, and no evidence suggests DVFS (or thermal throttling) would be implemented

23   in any other manner.

24       Furthermore, evidence of the operation of the Qualcomm and Samsung chips confirms

25   that thermal throttling is implemented by changing the values of programmable dividers.  For

26   example, ███████████████████████████████████████████████████

27   ███████████████████████████████████████████████

28   ███████████████████████████████████████████

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Case Nos.: 3:12-CV-03865; -03876; -03877; -03880; -03881

██████████████████████████████.[14]  Pedrali-Noy Decl., ¶ 10.  Thermal throttling may also be

implemented by adjusting the values of dividers or pulse swallowers between the PLL and the

CPU in the accused Qualcomm chips, however, adjusting the values of these components does

not result in any change to the frequency of the VCOs within the PLLs (*i.e.* the alleged entire

oscillators) in the accused Qualcomm chips.  *Id.*, ¶ 11.  Similarly, in the Samsung accused chips,

thermal throttling is implemented in one of two ways.  Lee Decl., ¶¶ 28-31.  The frequency of the

clock signal supplied to the CPU may be changed by ███████████████████████

████████████████████████████████████████████████.  *Id.*, ¶

29.  Alternatively, the frequency of the clock signal may be changed ██████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████.  *Id.*; *see also* Subramanian

Decl., ¶ 43.

### B.  Disclaimer Based On Magar

The second disclaimer recited in the Federal Circuit's construction, adopted without

modification from this Court's construction, is that the entire oscillator is one "whose frequency

is not fixed by any external crystal."  *Tech. Props.*, 849 F.3d at 1359.[15]  This disclaimer provides

an independent basis for summary judgment.  TPL stipulated to noninfringement under this

construction and nothing has changed.  As established above, the undisputed design and operation

of the accused products establishes that the frequency of the VCOs within the PLLs in the

accused products is "fixed by an[] external crystal" and, therefore, does not meet the "entire

oscillator" limitation.  TPL's infringement theories to the contrary are both inconsistent with the

---

[14] ████████████████████████████████████████████████████ Pedrali-Noy Decl., ¶ 10.
██████████████████████████████  *Id.*; *see also* Subramanian Decl. ¶ 46 n. 2.

[15]  This part of the construction arose from a prosecution history disclaimer in light of a prior art
reference to Magar.

-29-   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Case Nos.: 3:12-CV-03865; -03876; -03877; -03880; -03881

express language of the claims, and premised upon an erroneous reading of the word "fixed" in the claim construction, a reading which is inconsistent with (1) the '336 patent's specification, (2) the '336 patent prosecution history and (3) this Court's and the Federal Circuit's rulings.

          **1.**      **The frequency of the accused oscillators is fixed by an external crystal**

As established above, the undisputed operation of PLLs generally and the empirical evidence of the operation of PLLs in the accused products both confirm that the alleged "entire oscillators" – *i.e.* the VCOs within PLLs in the accused products – output a stable fixed frequency. *See* Sections II.C and IV.A.1.a and b, *supra*. This stable output frequency is fixed by an external crystal used as a reference signal for the PLL. In this regard, it is undisputed that the PLLs in the accused products require and rely upon an input from an off-chip crystal oscillator or clock generator. *See* Dkt. No. 127 (SAIC), Ex. B; *see also id*. at 10 ("Plaintiffs agree that the frequency range of Ring Oscillator is determined, in part, by the frequency of the external crystal.") . Indeed, as TPL explained in its opening appeal brief to the Federal Circuit, the PLL control circuit "uses this reference signal to set the output of the oscillator to a specific frequency." Ex. 5 (TPL Appeal Br.) at 20-21 (emphasis added); *see also* Ex. 6 (Subramanian Tr.) at 1150:4-9, 1151:8-13.

As established above, PLL control circuitry compensates for variations in PVT parameters to ensure that the VCO output frequency is "locked" to a fixed multiple of the reference signal from the crystal oscillator. *See* Sections II.C and IV.A.1.c, *supra*. The VCO output frequency is a direct mathematical function of the frequency of the crystal oscillator and programmable divisors within the PLL. *Id*. For example, if the crystal oscillator operates at 20 MHz, and the programmable divisor is set to 100, the PLL control circuity sets the fixed output frequency of the VCO, and thus the fixed output frequency of the PLL, to the fixed value of 100 times the frequency of the crystal, *i.e.* 2 GHz. *Id*.; Subramanian Decl., ¶ 45.

Because the VCO output frequency is fixed to a predetermined multiple of the external crystal oscillator frequency used as a reference signal, the VCO output frequency is fixed by the crystal oscillator. Indeed, both parties' experts agree that a change in the crystal oscillator frequency will necessarily result in a change in the VCO output frequency. For example,

Defendants' expert, Dr. Subramanian, explained that because there is a mathematical formula that defines the output frequency of a PLL as a function of the crystal reference frequency and the values of programmable dividers, "one can change the frequencies of course by changing the crystal" or by changing the value of the programmable dividers. Ex. 6 (Subramanian Tr.) at 1267:11-1270:10. Similarly, TPL's expert, Dr. Oklobdzija, conceded that there is a clear relationship between the VCO's output frequency and the crystal's reference frequency:

> Q. Now, you understand that there's a relationship between the frequency of the reference signal from the crystal and the frequency at the output of the VCO?
>
> A. Yes, there is a relationship, which is established by the divider. So if it divides by 100, the relationship is 1 to 100.

Ex. 6 (Oklobdzija Tr.) at 834:12-18; *see also id.* 835:20-21. Specifically, if the external crystal's frequency goes up, the VCO's frequency will also go up by a fixed ratio. *Id.* at 836:1-8. If the reference frequency goes down, so will the VCO's frequency. *Id.* 836:9-19. As Dr. Oklobdzija explained, "the output frequency would be changed if the input frequency changes. That's what PLL does." *Id.* at 967:18-21; *see also id.* 953:17-25.

### 2. TPL's infringement theories are meritless

Ignoring all of the above-described evidence establishing non-infringement, TPL's SAIC proffers vaguely worded contentions as to how the accused products allegedly meet the claim construction's requirement that the entire oscillator is one "whose frequency is not fixed by any external crystal." Dkt. No. 127 (SAIC) at 9-10. Both arguments are wrong.

#### a. TPL's theory that the accused oscillators are "inherently variable" is incorrect

TPL first contends, without citation to any evidence, that the frequency of the VCOs in the accused products is "inherently variable" and is "*never* fixed (by anything)." Dkt. No. 127 (SAIC) at 9 (emphasis in original); *see also id.* at 10 (at lines 16-20) (ring oscillators "are by nature, inherently variable in response to PVT and are never fixed"). TPL further argues that "a Ring Oscillator requires only a supply voltage to oscillate, and thus adjustments are made by regulating voltage" (*id.* at lines 19-20). However, as established above, the frequency output by

the VCOs in the PLLs of the accused products are stable and fixed, and do *not* change in response to changes in supply voltage (as distinct from the control voltage) as TPL alleges.  *See* Sections II.C and IV.A.1, *supra*.  Thus, to the extent that TPL is contending that ring oscillators, in isolation, are in theory free-running, that is not the case in the accused products, in which the VCOs are a tightly integrated part of a PLL system that precludes such frequency variation.  *Id*.

### b.    TPL is incorrect that the PLL's controlled frequency changes satisfy the Court's claim construction

TPL correctly notes that the accused products can operate at different frequencies.  Dkt. No. 127 (SAIC) at 9-10.  TPL also correctly notes that a change in frequency is accomplished in part by changing the values of the programmable divisors in the PLL.  *Id*. at 10 (at lines 13-15); *see also* Sections II.C and IV.A.1.c, *supra*.  TPL also vaguely points to the alleged (and unproven) minute frequency fluctuations that are discussed above in connection with the Sheets disclaimer.  Dkt. No. 127 (SAIC) at 10 (at lines 21-22).  TPL concludes from this that the PLL oscillator frequencies are not "fixed" and, therefore, that they satisfy the claim construction.  Dkt. No. 127 (SAIC) at 10 (at lines 4-10).  This assertion is wrong for at least two fundamental reasons.

### (1)    TPL's contention regarding intentional frequency changes by the PLL is incorrect

TPL contends that the VCO output frequency in the accused products is not "fixed" within the meaning of the claim construction because the frequency may be switched from one fixed frequency to another fixed frequency by "altering the value of the Programmable Divisor."  Dkt. No. 127 (SAIC) at 10.  This contention is without merit because it is at odds with the asserted claims, which are not directed to just any kind of changes in oscillator frequency, but rather are specifically directed to an oscillator whose frequency varies as a function of PVT parameters. Intentional changes to the oscillator frequency from one fixed frequency to another fixed frequency that are caused by a command input that changes the values of the Programmable Divisor rather than changes in PVT parameters falls outside the asserted claims, both because it is within the Sheets disclaimer and because it does not satisfy the limitation requiring frequency variation that is a function of PVT parameters.

1    As established in Section II.B above, the purported invention of the '336 patent is a

2    variable speed oscillator whose frequency is "determined by the parameters of temperature,

3    voltage, and process" so that "its performance tracks the parameters which similarly affect all

4    other transistors on the same silicon die." Ex. 1 ('336 patent) at 16:59-67; *see* Section II.B,

5    *supra*. The requirement that the frequency of the "entire oscillator" vary with and be caused by

6    changes in PVT parameters is embodied in the express language of the asserted independent

7    claims. Ex. 1 at claim 6 (claiming "varying" the "clock rate" of the entire oscillator "as a

8    function of parameter variation in one or more fabrication or operational parameters associated

9    with said integrated circuit substrate, thereby enabling said [CPU] processing frequency to track

10   said [entire oscillator] clock rate in response to said parameter variation"), claim 13 (same).

11   In contrast, altering the value of programmable dividers in the accused products is an

12   intentional change in the clock frequency from one fixed frequency to another fixed frequency

13   and is unrelated to changes in PVT parameters. Subramanian Decl., ¶ 44; *see also* Section II.C

14   and IV.A.1.a, b and c, *supra*. In this regard, Dr. Subramanian has explained that the PLL's use of

15   the crystal oscillator in the accused products is similar to a car's cruise control. Ex. 6

16   (Subramanian Tr.) at 1212:17-1214:25. The cruise control can, for example, keep the car's speed

17   fixed at 55 miles per hour, despite (and not as a result of) variations in environmental conditions

18   (*e.g.*, going uphill or downhill) that otherwise would alter the speed. *Id.* But, nothing prevents

19   the cruise control from then being used to change the speed of the car <u>intentionally</u> from 55 to 65

20   miles per hour, and then to maintain that second fixed speed. Subramanian Decl., ¶¶ 52-53.

21   Similarly, the crystal oscillator in the accused products is used in conjunction with the PLL to fix

22   the output frequency of the VCO at a selected one of a number of fixed frequencies that is a

23   multiple of the fixed frequency of the external crystal oscillator, and any change from one such

24   fixed frequency to another fixed frequency is not a variance in oscillator frequency that is a

25   function of PVT variation as the claims require. *See* Sections II.C and IV.A.1.a, b and c, *supra*.

26   Accordingly, the alleged "entire oscillators" in the accused products have a "fixed" frequency

27   within the meaning of the disclaimer in the Court's claim construction and, therefore, do not

28   satisfy the "entire oscillator" limitation.

### (2)   TPL's interpretation of "fixed" is incorrect

TPL's arguments also are premised on its "interpretation" of the word "fixed" in the claim construction as meaning the oscillator frequency never can change or fluctuate.  Dkt. No. 127 (SAIC) at 10 (defining "fixed" as "'not fluctuating or varying,' 'definite,' or 'predetermined and not subject to or able to be changed.'").  This "interpretation" of "fixed" is indisputably wrong.  Specifically, <u>in the patentee's own words</u>, a fixed frequency is one "designed to be <u>tightly controlled</u> and to <u>vary minimally</u> due to variations in manufacturing, operating voltage and temperature."  Ex. 2 (File History, July 3, 1997 Amendment) at 4 (emphasis added).  The VCOs within PLLs in the accused products – which TPL contends satisfy the "entire oscillator" limitation – are <u>tightly controlled</u> and <u>vary minimally</u> due to variations in manufacturing, operating voltage and temperature.  *See* Sections II.C and IV.A.1. and b, *supra*.  These accused devices are thus "fixed" frequency devices under the patentee's own definition.  TPL's newly-concocted contrary interpretation of "fixed" must be rejected as it contradicts the '336 patent specification, the prosecution history, and this Court's claim construction order and the Federal Circuit's opinion.

### (a)   TPL's interpretation of "fixed" is inconsistent with the specification

TPL's newly-concocted interpretation of "fixed" is antithetical to the very point of the '336 patent claims.  As established in Section II.B above, the stated purpose of the claimed invention is to do away with any external influence on clock frequency – such as the use of an external crystal.  Instead, the '336 patent would allow the oscillation frequency be "determined by the parameters of temperature, voltage, and process" so that "its performance tracks the parameters which similarly affect all other transistors on the same silicon die."  Ex. 1 ('336 patent) at 16:59-67; *see* Section II.B, *supra*.  For that reason, the ITC soundly rejected TPL's argument that the VCOs in the accused products are "variable" as opposed to "fixed":

> The teaching of the specification is antithetical to allowing outside influences to affect the clock rate of the on-chip oscillator, which is how prior art microprocessors operated. Rather, the specification explicitly teaches precisely the opposite, that the use of external sources for timing was inefficient and that the solution is to allow the clock rate of the oscillator to vary solely due to the same parameters that are affecting the operational efficiency of the remainder of the on-

chip components, e.g., the CPU. As such, <u>the specification of the '336 patent does not allow for the on-chip oscillator to be influenced by some outside source, e.g., an external crystal such as is used in a PLL</u>, which, by definition, isolates the clock rate of the on-chip oscillator from the effects of the chip's PVT parameters.

Ex. 32 (Commission Opinion) at 18-19 (emphasis added).

Having lost at the ITC, TPL now seeks a do-over.  But, just as the ITC concluded, the use of an external crystal in a PLL – such as in the accused products – "by definition, isolates the clock rate of the on-chip oscillator from the effect of the chip's PVT parameters."  (*Id.*)  Thus, the accused products are precisely the kinds of devices with which the '336 patent <u>contrasted</u> its invention.  In fact, rather than being isolated from the effects of PVT variations, the '336 patent specification teaches that the speed of the claimed variable speed clock "may vary by a factor of four depending upon temperature, voltage, and process."  Ex. 1 at 17:21-22.  The '336 patent specification also teaches that, although an external crystal clock should be used to control the speed of the I/O interface, it should be "decoupl[ed]" from "the variable speed of the CPU" in order to achieve "optimum performance."  *Id.* at 17:25-34.  This is opposite to the operation of the accused products.  The external crystal in defendants' products is not "decoupled" from the CPU and there is no variation in clock speed due to variations in PVT.

**(b)    TPL's interpretation of "fixed" is inconsistent with its statements during prosecution**

TPL's interpretation of "fixed" also contradicts numerous statements made by the applicants during prosecution to obtain the '336 patent.  For example, in response to the examiner's rejection over Magar, the patentee distinguished its application by asserting that "the clock disclosed in the Magar reference is in fact driven by a fixed frequency crystal, which is external to the Magar integrated circuit."  Ex. 2 (File History, July 3, 1997 Amendment) at 2.  Yet, TPL's interpretation of "fixed" would exclude the minor frequency variations exhibited by a

-35-    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Case Nos.: 3:12-CV-03865; -03876; -03877; -03880; -03881

1    "fixed frequency" crystal.[16]  Thus, TPL's new interpretation of "fixed" would now expand the

2    claims to encompass the disclaimed device disclosed in Magar because—according to TPL—the

3    minor frequency variations exhibited by Magar's external crystal would mean that the Magar

4    fixed-frequency crystal is somehow not a fixed-frequency device.

5         Similarly, during prosecution, the applicants asserted that even if the crystal in Magar

6    were entirely on the chip it still would not practice the claimed invention because, although the

7    frequency of the crystal would "vary minimally due to variations in manufacturing operating

8    voltage and temperature," the variations would be "tightly controlled" and would "not vary due to

9    variations in manufacturing, operating voltage and temperature in the same way as the frequency

10   capability of the microprocessor on the same underlying substrate."  Ex. 2 (File History, July 3,

11   1997 Amendment) at 4 (emphasis added).  TPL therefore clearly disclaimed any chip for which

12   the clock frequency "var[ied] minimally," but where the variance was "tightly controlled" and

13   was not due to PVT variations.  *Id.*  Here, other than the intentional changes in PLL frequency

14   that are discussed above and fall outside of the scope of the claims, any alleged variances in the

15   frequency of the VCO in the PLLs in the accused products would be "minimal," and all frequency

16   changes in the PLL are "tightly controlled" and do not arise from variations in PVT parameters.

17   *See* Sections II.C and IV.A.1. b and c, *supra*.  Thus, TPL now seeks to redefine "fixed" in a

18   manner that is directly inconsistent with the manner in which it described a "fixed" frequency

19   device during prosecution.

20        Finally, the applicants distinguished Magar by asserting that in the '336 patent "the speed

21   of the CPU and the clock vary together due to manufacturing variation, operating voltage and

22   temperature of the IC," whereas in Magar "the speed of the CPU and the clock do not vary

23   together due to manufacturing variation, operating voltage and temperature of the IC."  Ex. 2

24   (File History, July 3, 1997 Amendment) at 3 (emphasis in original).  Yet, TPL now contorts the

25   _____

26   [16] As established above, the minor frequency variations that TPL asserts exist in the VCOs in the
     accused products are equal to or less than the frequency variations exhibits by crystal oscillators.

27   *See* Section IV.A.1.b, *supra*.

28

1   meaning of "fixed" to assert the claims cover chips for which TPL concedes that an external

2   crystal "keep[s] the frequency of the Ring Oscillator within a predetermined range as conditions

3   surrounding the Ring Oscillator change."  Dkt. No. 127 (SAIC) at 5.  Contrary to the claims and

4   teachings of the '336 patent, TPL now seeks to cover chips in which "the speed of the CPU and

5   the clock do not vary together due to manufacturing variation, operating voltage and temperature

6   of the IC," despite distinguishing Magar on that very ground. Ex. 2 (File History, July 3, 1997

7   Amendment) at 3 (emphasis in original).

8        Because TPL's interpretation of "fixed" in the claim construction is inconsistent with

9   what it told the PTO during prosecution to distinguish the Magar prior art reference, it cannot be

10   correct.  *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995) ("Claims

11   may not be construed one way in order to obtain their allowance and in a different way against

12   accused infringers."); *Computer Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1379 (Fed.

13   Cir. 2008) (a patentee "cannot recapture claim scope disavowed during prosecution to prove

14   infringement").

15        (c)   **TPL's reading of "fixed" is inconsistent**
16        **with this Court's and the Federal Circuit's**
        **rulings**

17        TPL's interpretation of "fixed" is also inconsistent with the part of this Court's claim

18   construction order that addressed the Magar disclaimer, in which the Court construed "entire

19   oscillator" as including the disclaimer "whose frequency is not fixed by any external crystal."

20   Dkt. No. 104 at 2, 4-6, 10.  The Federal Circuit adopted this portion of the claim construction

21   without modification.  Dkt. No. 111; *Tech. Props.*, 849 F.3d at 1359.

22        Judge Grewal's Recommendation supported the inclusion of this disclaimer in the claim

23   construction by explaining that the applicants had "disclaimed use of an external crystal to cause

24   clock signal oscillation."  Dkt. No. 104 at 5.  Similarly, Judge Grewal explained that the patentee

25   had emphasized "that the claimed invention did not rely on an external crystal's fixed frequency

26   to set the clock's frequency rate."  *Id.*  The Federal Circuit's opinion likewise states that one

27   aspect of the applicants' Magar disclaimer was "that the 'entire oscillator' cannot require an

28   external crystal," and that, among their many disclaiming statements about Magar, applicants said

1   Magar taught a frequency controlled by an external crystal, and that Magar relied on an external

2   crystal to oscillate. *Tech. Props.*, 849 F.3d at 1359. Thus, the disclaimer "whose frequency is not

3   fixed by any external crystal" should exclude products that make use of an external crystal to

4   oscillate or to set the clock's frequency.

5        In its SAIC, TPL concedes that "the frequency range of" the oscillators in the accused

6   products "is determined, in part, by the frequency of an external crystal." Dkt. No. 127 (SAIC) at

7   10. This is confirmed by the above-described, undisputed operation of the PLLs in the accused

8   products. *See* Sections II.C and IV.A.1. b and c, *supra*. Thus, the accused "entire oscillators"

9   require an external crystal and rely on an external crystal's fixed frequency to set the clock

10  frequency's rate. The frequency of the alleged "entire oscillators" is, therefore, "fixed by an

11  external crystal," and, accordingly, the "entire oscillator" limitation is not satisfied.

12  **V.   CONCLUSION**

13       There is no genuine dispute that Defendants' products produce clock signals at a

14  frequency that is fixed by an external crystal and can be changed only by command inputs. For

15  each of these independent reasons, Defendants request that the Court grant summary judgment of

16  non-infringement as to all asserted claims.

17  Dated:  September 29, 2017

18                                                      **DLA PIPER LLP (US)**

19                                                      */s/ Mark D. Fowler*
                                                        Mark D. Fowler (SBN 124235)
20                                                      Aaron Wainscoat (SBN 218337)
                                                        Erik R. Fuehrer (SBN 252578)
21                                                      2000 University Avenue
                                                        East Palo Alto, CA 94303
22                                                      Tel.  (650) 833-2000
                                                        Fax  (650) 833-2001
23
24                                                      James M. Heintz (*pro hac vice*)
                                                        11911 Freedom Dr.
25                                                      Reston, VA 20190
                                                        Tel.  (703) 733-4000
26                                                      Fax  (703)733-5000
27                                                      Robert C. Williams (SBN 246990)
28                                                      401 B Street, Suite 1700

San Diego, California 92101
Tel. (619) 699-2700
Fax (619) 699-2701

Attorneys for Defendants
SAMSUNG ELECTRONICS CO., LTD.
and SAMSUNG ELECTRONICS
AMERICA, INC.


**MCDERMOTT WILL & EMERY LLP**

*/s/ Charles M. McMahon*
MCDERMOTT WILL & EMERY LLP
Charles M. McMahon (*pro hac vice*)
cmcmahon@mwe.com
Hersh H. Mehta (*pro hac vice*)
hmehta@mwe.com
444 West Lake Street
Chicago, IL 60606
[Tel.] (312) 372-2000
[Fax] (312) 984-7700

Fabio E. Marino (SBN 183825)
fmarino@mwe.com
L. Kieran Kieckhefer (SBN 251978)
kkieckhefer@mwe.com
275 Middlefield Road, Ste. 100
Menlo Park, CA 94025
[Tel.] (650) 815-7400
[Fax] (650) 815-7401

Attorneys for Defendants,
ZTE CORPORATION and ZTE (USA) INC.


**STEPTOE & JOHNSON LLP**

*/s/ Timothy C. Bickham*
Timothy C. Bickham
Steptoe & Johnson LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
Telephone: (202) 429-5517
Facsimile: (202) 429-3902

Attorneys for Defendants
HUAWEI TECHNOLOGIES CO., LTD.,
HUAWEI DEVICE CO., LTD.,
HUAWEI DEVICE USA INC.,
FUTUREWEI TECHNOLOGIES, INC., and
HUAWEI TECHNOLOGIES USA INC.

1

2                                  **FISH & RICHARDSON P.C.**

3                                  */s/ Scott A. Elengold*
                                      Michael J. McKeon, *pro hac vice*

4                                  mckeon@fr.com
                                  Christian A. Chu (CA SBN 218336)

5                                  chu@fr.com
                                  Richard A. Sterba, *pro hac vice*

6                                  sterba@fr.com
                                  Scott A. Elengold, *pro hac vice*

7                                  elengold@fr.com
                                  FISH & RICHARDSON P.C.

8                                  McPherson Building
                                  901 15th Street, N.W., 7th Floor

9                                  Washington, D.C.  20005
                                  Tel.  (202) 783-5070

10                                Fax:  (202) 783-2331

11

12                                  Olga I. May (CA SBN 232012)
                                  omay@fr.com

13                                  FISH & RICHARDSON P.C.
                                  12390 El Camino Real

14                                  San Diego, CA 92130
                                  Tel.  (858) 678-4745

15                                  Fax:  (858) 678-5099

16                                  Attorneys for Defendants
                                  LG ELECTRONICS, INC. and

17                                  LG ELECTRONICS USA. INC.

18                                  **COOLEY LLP**

19                                  */s/Matthew J. Brigham*
                                  **Cooley LLP**

20                                  Matthew J. Brigham (SBN 191428)
                                  mbrigham@cooley.com

21                                  3175 Hanover Street
                                  Palo Alto, CA 94304-1130

22                                  Tel.:  (650) 843-5000
                                  Fax:  (650) 849-7400

23

24                                  Stephen R. Smith (pro hac vice)
                                  stephen.smith@cooley.com

25                                  1299 Pennsylvania Ave., NW
                                  Suite 700

26                                  Washington, DC 20004
                                  COOLEY LLP

27                                  Tel.:   (703) 456-8000
                                  Fax:  (703) 456-8100

28                                Attorneys for Defendants

1

2          NINTENDO CO., LTD and
           NINTENDO OF AMERICA INC.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **ATTESTATION**

2      I, Erik R. Fuehrer, am the ECF User whose ID and password are being used to file

3  Defendants' Case Management Statement.  In compliance with Civil Local Rule 5-1(i)(3), I

4  hereby attest that the signatories listed above have read and approved the filing of this brief.

5
                                                         */s/ Erik R. Fuehrer*
6                                                        Erik R. Fuehrer
                                                         DLA Piper LLP (US)
7                                                        2000 University Avenue
                                                         East Palo Alto, CA  94303
8                                                        Tel.  (650) 833-2000
                                                         Fax  (650) 833-2001
9                                                        erik.fuehrer @dlapiper.com

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28